(59 South. 817.)

No. 19,044.

RUDISON v. GLOVER et al.

(June 19, 1912. Rehearing Denied Oct. 21, 1912.)

*(Syllabus by the Court.)*

1. EVIDENCE (§ 32*)—JUDICIAL NOTICE.

Courts do not take judicial cognizance of city ordinances.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 42; Dec. Dig. § 32.*]

2. MASTER AND SERVANT (§ 137*)—INJURIES TO SERVANT—LIABILITY OF MASTER.

Civ. Code, art. 177, does not apply to damages to a workman engaged in the construction of a building.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

3. DISMISSAL AND NONSUIT (§ 26*) — JOINT TORT-FEASORS—DISCHARGE OF ONE.

When suit has been brought in solido against tort-feasors, plaintiff may discharge one of them with reservation of his rights against the remaining defendants.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 46, 48–59; Dec. Dig. § 26.*]

Appeal from Civil District Court, Parish of Orleans; Thos. C. W. Ellis, Judge.

Action by Agnes Rudison against George J. Glover and the Roebling Construction Company. Action settled as to the Roebling Construction Company. Judgment for plaintiff, and defendant Glover appeals. Reversed, and judgment for defendant.

P. M. Milner, of New Orleans, for Geo. J. Glover. Wm. A. Collins and Benj. R. Forman, both of New Orleans, for appellee.

SOMMERVILLE, J. Moses Rudison, while hoisting pipe from the street to an upper floor of the Whitney-Central building, then in an early stage of construction, was killed by a piece of falling timber. It was established that the piece of timber fell from the building, but there is nothing in the evidence to show from what floor it fell, or what caused it to fall.

George Glover was the general contractor. His codefendant, the Roebling Construction Company, had from him a subcontract to do the concrete work. Deceased was 45 or 46 years old, was in good health, had for more than three weeks prior to the accident been in the employ of the plumbing subcontractors, and during all that time was engaged in hoisting pipe. So far as the cause of death is concerned, the only fact established being that deceased was killed by a piece of timber that fell from some place or other in the structure, Glover can be liable only upon the theory that he neglected to furnish his employés with such a reasonably safe place to work in as the nature of the case permitted.

A compromise of the claim against the Roebling Company having been made before the trial in the lower court, Glover is now sole defendant.

Counsel for the widow of deceased urges that the building ordinances of the city of New Orleans (section 8 of Act 264 of 1908, p. 388), and C. C. art. 177, suffice to entitle her to a judgment.

[1] Courts do not take judicial cognizance of ordinances, and, as the ordinances were not offered in evidence and are not to be found in the transcript, we are without means of ascertaining what these ordinances provide.

The accident complained of not having been caused by any defect in any "scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance constructed for use in the erection" of the building, the act of 1908 has no application. The fourth paragraph of section 8 of the quoted act is also of no pertinence; that paragraph provides that, when a building is in course of construction, the street shall be barricaded from use by the public.

[2] C. C. art. 177, provides that the master is answerable for the damage caused by

whatever is thrown out of the house, inasmuch as he has the superintendence and police of his house, and is responsible for the faults committed therein. But the article has no application to damage to a workman engaged in the construction of a building.

[3] Counsel for Glover urges that, plaintiff having discharged one of the defendants sued in solido, the other codefendant is also discharged, notwithstanding the reservation of rights. And it is argued that the declaration of C. C. art. 2203, that conventional discharge of one of the codebtors in solido does not discharge the others, when the creditor has expressly reserved his rights against them, applies only to conventional obligations. To this view we cannot accede. It is true that the article in question is in that part of the Code treating of conventional obligations, but it is contained in a section entitled, "Of the rules which govern obligations with respect to debtors in solido." Article 2091 provides:

"There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole."

Article 2093 provides:

"An obligation in solido is not presumed; it must be expressly stipulated. This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."

C. C. art. 2097, provides:

"A suit brought against one of the debtors in solido interrupts prescription with regard to all."

Thus the title of the section and the language of the three articles last above quoted can leave no doubt that all the articles of the Code in said section contained apply to all solidary debtors, except those articles expressly restricted to conventional obligors. Hence the exception of no cause of action filed on behalf of defendant Glover was properly overruled.

It is perfectly apparent to every one that when a man is engaged in labor upon a large office building in process of construction, where 500 and 600 men are constantly at work, such laborer is necessarily exposed to risks that no human foresight can provide against. Certainly a man who has been at work on a building for more than three weeks must know of these dangers, and must be presumed to have assumed the risks. But assumption of risk does not dispense the contractor having supervision of the building from the duty of providing such safe place to work in as circumstances permit.

As to what the circumstances permitted defendant was the sole witness examined. He swears that the granite work had not been begun at the time of the accident, and that a shed could not be put up until such work was about 12 feet high; that it would be a physical impossibility to set the granite with a shed in the way. There was no cross-examination of the witness; but his statement impresses us as true. The heavy granite blocks that make up the walls between the steel uprights are swung into place by means of a crane. As these blocks are swung into position the stone masons handle them, and build up the wall. We do not very well see how the granite blocks could be moved into position by the crane if an intervening shed stood between the side of the building and the crane. Until the wall has been built up to a sufficient height to permit the crane to swing above it, the erection of a shed appears to us impracticable. The witness states that that height is 12 feet. This seems reasonable to us, especially as no effort to disprove this statement was made.

In view of these considerations, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment for defendant, with costs of both courts.