**SLY v. NEW ORLEANS, T. & M. RY. CO. et al.***

No. 4307.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

H. W. Ayres, of Jonesboro, and J. F. Phillips, of Shreveport, for appellant.

Milling, Godchaux, Saal & Milling and Lawrence K. Benson, all of New Orleans, for appellee New Orleans, T. & M. Ry.. Co.

Barksdale, Warren & Barksdale, of Ruston, for appellee Chicago, R. I. & P. Ry. Co.

PALMER, J.

Plaintiff sues to recover of the defendants, New Orleans, Texas & Mexico Railway Company, and Chicago, Rock Island & Pacific Railway Company, in solido, the sum of $25,000, as damages for personal injuries he alleged he received from a car door falling and knocking him to the ground, after he had driven his wagon alongside the car for the purpose of obtaining a load of fertilizer.

Statement of Case.

On April 14, 1930, a box car loaded with fertilizer, which had been consigned to one W. R. Guess, was being unloaded at Quitman, La., by employees of the consignee. After several wagons had been loaded with fertilizer taken from the car, plaintiff, a colored farmer about the age of 65 years, and working for the said W. R. Guess, drove a wagon alongside the box car for the purpose of obtaining a load of fertilizer. He was being assisted in this work by another colored man by the name of Pete Myles. As he and his said co-worker were standing in the wagon, the door of the car fell off, and, in falling, it struck plaintiff and knocked him to the ground. The blow rendered him unconscious. In the meantime Dr. E. Blume of Jonesboro came upon the scene and examined plaintiff and gave him some medical attention.

On the following day the claim agent of the Chicago, Rock Island & Pacific Railway Company, accompanied by the local agent for the Rock Island, went out to plaintiff's home to interview him concerning the accident. From the plaintiff these representatives of the railroad company secured information sufficient to prepare a written statement as to the manner in which the accident happened. Upon the statement being reduced to writing, plaintiff signed it. The statement was witnessed by the representatives of the railroad company and by the foreman of W. R. Guess' plantation, under whom plaintiff was working at the time of his injuries. At that time some effort was made by the railroad representatives to settle plaintiff's claim, but the foreman of Mr. Guess objected to plaintiff compromising his claim, apparently because

*Rehearing denied July 14, 1932.

he did not know the extent of plaintiff's injuries, so plaintiff thereupon declined to consider any negotiations for a settlement of his claim at that time.

On the following day the claim agent of the railroad company returned to plaintiff's home, and this time was accompanied by Dr. Blume, who was at that time, and had been for some time past, plaintiff's family physician. He also was local surgeon for the Rock Island. Dr. Blume at that time made a physical examination of plaintiff, and, after he concluded that there was nothing of a serious nature wrong with him as a result of the said accident, the claim agent then again discussed with plaintiff the question of a compromise. It appears that plaintiff himself fixed the amount that would be acceptable to him as a settlement of his claim at $40. At any rate, he was given a check or draft for that amount drawn on the Rock Island. The face of the check or draft contained the following stipulation: "Full settlement of all claims of whatever kind or description growing out of injuries received at or near Quitman, Louisiana, on or about April 14, 1930, while a licensee."

At the same time plaintiff signed an unconditional release, in part reading as follows:

"Now, therefore, for the sole and only consideration of the sum of Forty and No/100 Dollars ($40.00), to me this day paid by said The Chicago, Rock Island and Pacific Railway Company, in behalf of itself, and other companies whose lines are owned, leased or operated by it, I do hereby compromise said claim and do release and forever discharge said Railway Company, and all companies, whose lines are leased by it, and their respective agents and employees, from any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those now apparent, and also do release and discharge them of all suits, actions, causes of action and claims for damages on account of injuries to my person, as well as damages to my property, if any, which I have or might have arising from, growing out of, or in anywise connected with the accident above referred to, and do hereby acknowledge full satisfaction of all such liability and causes of action.

"In making this settlement I rely solely on my own judgment and information, and do not rely on any statements or representations as to the facts of the accident or of the character and extent of my injuries, which may have been made to me by any of said railway companies, or by any of their officers, agents, employees or physicians, respectively.

"It is expressly understood and agreed that this settlement carries with it no promise whatever of continued or future employment.

"It is further expressly understood and agreed that this release shall be deemed to be and shall be a complete bar to any action which might otherwise be brought, either at law, or under any state or federal workmen's compensation act, employers' liability act, labor law, or any other statute, for the recovery of compensation or damages on account of said injuries (or of resulting death, if this be executed by an administrator or administratrix of the estate of said person), for the benefit of any person whomsoever or estate whatsoever.

"I further represent and covenant that at the time of receiving said payment and signing and sealing this release I am of lawful age and legally competent to execute it, and that before signing and sealing it I have fully informed myself of its contents and executed it with full knowledge thereof, and I fully understand that I can make no further claim against the Railway Company, even though my injuries are more serious than, or different from, those I now know about or what I understand them to be.

"This report was read to Bradford Sly by Dr. E. Blume and Bradford Sly states he understands it is a release.

"B. B. Ring

"Given under my hand and seal this 16th day of April, A. D. 1930. In presence of:

"E. Blume   Wit: B. B. Ring

"O. K. Brown        his
                    X   Bradford Sly."
                    mark

Plaintiff, in effect, alleged that the defendants are indebted to him in the said sum of $25,000 for permanent injuries he sustained as a result of the said accident. He further averred that the box car in question was routed and shipped by Armour Fertilizer Works at Shrewsbury, La., through the New Orleans, Texas & Mexico Railway Company, and that it was the duty of the said railroad company to have inspected the box car before delivering it to Armour Fertilizer Works for loading and before accepting it from Armour for transportation; that the said railroad failed to make such inspection, but that, if it was made, it was done in a careless manner and that, if a thorough inspection had been made, it would have revealed that the said box car was unfit to be loaded or used.

The claim against the Chicago, Rock Island & Pacific Railway Company is that it received the box car from the New Orleans, Texas & Mexico Railway Company without making any inspection which, if it had been made, would have revealed the defects in the car door and thereby the accident would not have happened.

After having alleged the cause of action in substance as above set forth, plaintiff then alleged, on information and belief, "that some person unknown to him came and paid him the sum of $40.00 and secured a receipt and some kind of release of liability for said in-

juries, of which he has no personal knowledge or recollection; that he does not know the nature of the instrument he may have signed, for the reason that he did not have his proper mental faculties at the time, and whatever may have been the nature of said transaction, it was fraudulent and secured by fraud on the part of such party or parties, whomsoever they may have been, and is now expressly renounced and repudiated by him."

In the alternative, plaintiff alleged that, if the court should find he did have possession of his mental faculties, the alleged compromise was void in that it was not supported by valid, material, or equitable consideration. The Chicago, Rock Island & Pacific Railway Company denied liability and the injuries alleged, and pleaded the compromise in bar of plaintiff's demands.

The New Orleans, Texas & Mexico Railway Company denied liability, as well as the injuries alleged. It admitted that the car in question was routed and shipped by and through it, and that it was thereafter delivered to the Chicago, Rock Island & Pacific Railway Company, but it denied that the car was defective or that it had been improperly inspected or that it had violated any duty to plaintiff. It further averred, by way of amended answer, that the box car in question was tendered to Armour Fertilizer Works in Shrewsbury, La., by the Y. & M. V. Ry. Company, which company inspected the car before it was tendered, and that thereafter the Y. & M. V. Ry. Company transported the car to Anchorage, La., where it was delivered to the New Orleans, Texas & Mexico Railway Company, and where, for the first time, it came under the control and responsibility of the New Orleans, Texas & Mexico Railway Company.

The New Orleans, Texas & Mexico Railway Company also pleaded the said compromise as a bar to plaintiff's action against it.

The trial court held that the compromise, having been entered into between the plaintiff and the Chicago, Rock Island & Pacific Railway Company in good faith, while plaintiff was in full possession of all his mental faculties, released the Rock Island from liability, and that, because the release was unconditional, and made no reservations to plaintiff's rights against any one, the New Orleans, Texas & Mexico Railway Company also was released from liability under the provisions of article 2203 of the Civil Code of Louisiana. The trial court, having held that the compromise settlement was valid, did not go into the question of the alleged negligence of the defendants. From that judgment plaintiff prosecutes this appeal.

### Opinion.

In discussing the act of compromise, and the attack thereon made by plaintiff, the district judge, in an able written opinion, covered the questions involved very thoroughly. We feel he has decided the case equally as well as we could hope to do, so we quote below the opinion in that respect and adopt it as our own, to wit:

"The defendants rely upon this compromise settlement and the release signed by plaintiff as a complete bar to plaintiff's right to recover in this suit.

"Plaintiff attacks said settlement on two grounds, viz.:

"First, that it was obtained by fraud while plaintiff was not in possession of his mental faculties; and, second, that if it was not obtained by fraud, then that it lacked a valid, material, or equitable consideration for the injuries and suffering sustained.

"Fraud is established by proof of fraud. Plaintiff has failed to prove fraud in this case. Plaintiff did not testify as a witness in his own behalf. He was in attendance in court on at least three different occasions. He was called to the stand twice for the purpose of cross-examination. Both times he sat in the witness chair and acted as if he was completely dumb and refused to answer any of the questions propounded to him. There is no allegation in the petition that he was insane. Counsel for plaintiff frankly admit, in argument, that there is no contention on their part that he was or is insane. The evidence shows that he answered questions intelligently when examined by Mr. Ring and Dr. Blume, when the settlement was made, when Dr. Simonton examined him, when Dr. McBride examined him, when Dr. Cassity examined him, and that he talked intelligently at other times. In the light of all the testimony in this case I cannot understand why plaintiff could not and should not have testified, in his own behalf, at some stage of the trial.

"The evidence does not show that, in making the settlement, the agent of the Rock Island was guilty of any fraud or deceit, or that he willfully withheld from the plaintiff any material fact within his knowledge; nor does it show that he misrepresented any fact or condition to plaintiff. On the contrary, the evidence shows that the claim agent assured himself as to plaintiff's condition, before making a settlement, by taking Dr. Blume with him on the occasion that the settlement was made. Counsel for plaintiff would discount the testimony of Dr. Blume. But Dr. Blume is corroborated in his findings by the testimony of Dr. A. E. Simonton and Dr. W. M. McBride, two physicians in whose ability and integrity this court has the utmost confidence. Mr. Melvin Blalock, who exhibited a friendly interest in behalf of plaintiff, does not show, by his testimony, that any fraud or deceit was practiced on plaintiff. I think it shows the contrary. So my conclusion is that plaintiff has failed to

establish his allegation that the release was obtained by fraud, and, that being the case, the settlement cannot be set aside on the ground of fraud.

 "Neither can it be set aside on the ground of lesion. Article 3078 of the Revised Civil Code says: 'Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.'

"In the case of Ackerman v. McShane, 43 La. Ann. 507, 9 So. 483, the Supreme Court said:

" 'In all such actions the party seeking relief must first offer to restore his adversary to the situation he was in before the contract.

" 'As long as the plaintiff retains the consideration, and does not offer to return the amount received, he is estopped.'

"The above rule of law is sanctioned in the case of Russ v. Union Oil Co., 113 La. 203, 36 So. 937. The facts and issues involved in the Russ Case are very similar to those in the case at bar.

"Then, in the case of Massey v. Pickering Lumber Co., 136 La. 688, 67 So. 552, another case in which the issues of this case were strikingly involved, the Supreme Court held that: 'A compromise of a claim for damages for personal injuries made in good faith cannot be attacked on account of any error in law or for inadequacy of the price.'

"It is my conclusion, therefore, that the release executed by plaintiff, in settlement with the Chicago, Rock Island & Pacific Railway Company, completely discharged that defendant from further liability, and, as to that defendant, the case is closed.

 "The other defendant, New Orleans, Texas & Mexico Railway Company, being alleged to be a solidary debtor, is discharged from liability by the same release.

"Article 2203 of the Revised Civil Code says:

" 'The remission or conventional discharge in favor of one of the co-debtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.

" 'In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission.'

"It will be noted that plaintiff made no reservation of his rights against the New Orleans, Texas & Mexico Railway Company, in the release executed by him in favor of the Rock Island Company.

"Civ. Code, art. 2203 is the law applicable to the issue here. See Rudison v. Glover, 131 La. 381, 59 So. 817.

"It is the settled jurisprudence of this State that 'a settlement with, and an unconditional discharge of one of the tort-feasors has discharged the other.' Orr & Lindsley v. Hamilton, 36 La. Ann. 790; Irwin v. Scribner, 15 La. Ann. 583; Fridge v. Caruthers, 156 La. 746, 101 So. 128; Recile v. Southern United Ice Co., 17 La. App. 611, 136 So. 769.

"Having reached the conclusion that both defendants were released and discharged from further liability by the contract of compromise entered into by and between the plaintiff and the defendant Chicago, Rock Island & Pacific Railway Company, and that plaintiff is barred thereby from recovering, in this suit, from either of the defendants, it is not necessary to pass on any of the other issues raised in this case.

"For the reasons herein assigned, there should be judgment herein in favor of the defendants and against the plaintiff, rejecting the demands of the plaintiff, at his costs."

The judgment of the lower court is therefore affirmed, plaintiff, appellant, to pay all costs of the appeal.