### BREWSTER v. J. C. BYRAM & CO., Inc.
### No. 4594.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Rehearing Denied July 15, 1933.

Irion & Switzer and Charles B. Emery, all of Shreveport, for appellant.

Langston & Thomas, of Minden, and J. Rush Wimberly, of Arcadia, for appellee.

TALIAFERRO, Judge.

Plaintiff brings this suit to recover damages for injuries to him from a collision between the one-half ton truck of Aaron Burkitt, in which plaintiff was riding as a guest, and a three-ton truck of the defendant, operated by Grady Bostick, an employee. The collision occurred on Saturday, February 27, 1932, at the intersection of Miller street with South Broadway, in the city of Minden, La. Plaintiff alleges that the accident was due entirely to the gross negligence and lack of care of defendant's driver and enumerates in detail various acts of omission and commission constituting such negligence and lack of care.

Defendant denies that the accident happened because of any negligence or lack of care on its part, and specially pleads that plaintiff was injured as a result of the joint and concurring contributory negligence of himself and Aaron Burkitt, with whom he was riding.

The conclusion we have reached concerning the validity of the act of compromise between plaintiff and defendant obviates a detailed summary of the allegations of the petition and answer pertinent to the merits of the case. To sustain this plea finally disposes of the case. Touching the compromise plaintiff's petition has the following to say:

"11. That the defendant so recognized his fault, negligence and culpability and his responsibility for the damage and injury caused petitioner that he sent a representative from a distant city to the bedside of plaintiff in the sanitarium, gave plaintiff a small sum of money; that defendant, also, as far as plaintiff knows paid the doctor's fees, medical bills and sanitarium charges.

"12. That said representative had plaintiff sign a piece of paper declaring the paper to be nothing more than a receipt for the money paid; that plaintiff can neither read nor write, is a laboring man, and was at the time he signed such paper under the influence of the agent; that the contents of the paper were not read to plaintiff nor were the contents explained to him.

"13. That said representatives of defendant's cajoled, misled and influenced petitioner to accept the money and to sign the paper; that what the contents of the paper were which he signed he does not now know and never did know; that said representatives did not give plaintiff a copy of the paper, and did not explain its contents to him; that plaintiff repudiates the signing of any

paper by him or by his wife; that such signing was acquired by fraud, duress and misrepresentation; that petitioner took money from the defendant's representative but that nowise and in no way does plaintiff consider such paltry and inadequate sum as in any manner compensating him for the injuries received at defendant's hand; that plaintiff repudiates the small gift of money and the signatures to the 'receipts' as all done by and through the blandishments of defendant's representatives."

In limine, defendant filed a plea of estoppel against plaintiff's right to institute and prosecute this suit, based upon the alleged compromise, from which we quote the following: "That the injury complained of in plaintiff's petition filed herein became the subject of a compromise, adjustment, transaction and agreement with release, receipt and disclaimer of plaintiff all hereto attached and made a part hereof, as well as a check made payable to said plaintiff and checks made payable to the Minden Sanitarium, Inc., and Dr. J. B. Benton, respectively, in pursuance of said compromise agreement and endorsed and cashed by said payees named in said checks, all of which your exceptor herein pleads in bar of this suit and in estoppel thereof."

A trial of this plea was had in advance of trial on the merits. The lower court overruled the plea and defendant answered. The case was then tried on its merits. There was judgment for $500 for plaintiff, in addition to the amounts paid to him and for his account by defendant. After unsuccessful application for rehearing, defendant appealed. Plaintiff prays for an increase in the judgment to $1,500. Defendant, in this court, relies almost exclusively on the plea of estoppel to win.

In his written opinion, overruling the plea of estoppel, the trial judge said: "Except for one thing, the plea of estoppel would have to be sustained, but it is clearly shown by the evidence that both Munsey and Irion in attempting to make the settlement contended that there was no legal liability on defendant, but offered to pay the small sum that was paid in order to prevent a suit. Mrs. Brewster says they spoke of it as a charitable gift. They deny using the word 'charity,' but this is unimportant. If they owed nothing and were offering to pay something it was a gift, and might be considered charity anyway. Whether or not there is any legal liability on the part of defendant is not now before the court, and their representations to that effect may have been made in the utmost good faith, and may later be borne out on a trial of the case on the merits, but I am of the opinion that these statements that there is no legal liability influenced plaintiff to make the settlement that he made."

Counsel for defendant, in their brief, state that the lower court found no error of fact to support the judgment overruling the plea of estoppel, but in denying a rehearing, the court stated that its decision was based on an error of law. This is borne out by the judgment itself.

Plaintiff was knocked unconscious when the trucks collided. He was immediately carried to a sanitarium in Minden, being semiconscious when he arrived. He suffered concussion of the brain, and was treated by Dr. Benton, the sanitarium's head surgeon. He was discharged by Dr. Benton on March 1st, as cured.

On this day Mr. C. G. Munsey, representing defendant's indemnitor, accompanied by Mr. Val Irion, its attorney, went to Minden for the purpose, among others, of attempting a settlement with plaintiff for the injuries he received in the collision. Before approaching plaintiff about the matter, they very prudently discussed his physical and mental condition with Dr. Benton, and being assured by the doctor that no good reason existed for them not to discuss a settlement with him, they, after having noon lunch, proceeded to the sanitarium, where they found plaintiff sitting up in a chair, attended by his wife. They introduced themselves, and informed him that they represented the company that carried insurance on defendant's trucks, and, after exchange of a few words bearing upon the circumstances of the accident, plaintiff giving his version thereof, Mr. Munsey stated that his investigation of the accident led him to the belief that there was no liability for damages on the part of defendant and his company, but in order to close the case, he was willing to make some sort of settlement. He proposed to plaintiff to pay him $35 and absorb the hospital and doctor's bills, amounting to $90. Plaintiff refused this offer, but countered by offering to settle for $75 for himself, defendant paying the other two bills. Mr. Irion then suggested that an amount be included to defray the transportation expenses of Mrs. Brewster to Minden, and transportation of herself and plaintiff back home; $3 additional was included for this purpose and the transaction closed out by Munsey issuing his draft on the insurance company for $78 to plaintiff, in the fact of which appears the following: "In full settlement and satisfaction of all claims arising out of accident, February 27, 1932, at Minden, La."

This draft was indorsed by plaintiff and cashed, or deposited for collection by him March 4th. When the draft was delivered to plaintiff, he signed a release to defendant in the following words and figures:

"Release

"Received of J. C. Byram & Co., this 1st day of March, 1932, the sum of Seventy-

eight & No/100 dollars ($78.00), in full satisfaction and extinguishment of all claims and causes of action arising out of any damage or loss, direct or indirect, or bodily injuries sustained by me in consequence of an accident on or about the 27th day of February, 1932, at Minden, La. Bill of Dr. Benton to $50.00 and hospital to $40.00 to be paid in addition.

"W. J. Brewster.

"Witness:
"Mrs. T. T. Brewster.
"C. G. Munsey."

It will be noted that Mrs. Brewster attested her husband's signature as a witness. This release, before being signed by plaintiff, was handed to him by Mr. Munsey. He passed it to his wife, stating that she did the reading for him. She glanced over it, apparently reading it, and then handed it to Mr. Irion, who read it aloud and explained its contents to plaintiff and wife. It was then executed. The sanitarium bill and amount due Dr. Benton were paid by defendant, in keeping with the terms of settlement. Mrs. Brewster, while admitting the release was handed to her for examination before being executed, denies that it was read aloud or explained by Mr. Irion. Plaintiff was unable to recall anything about his stay in the sanitarium, the settlement, or the signing of the release, but when presented with the canceled draft of $78, and asked if the signature on the reverse side was his, answered: "Yes, sir. I reckon so." And when asked if he got the cash on the draft, replied: "My wife says I did."

On trial of the plea of estoppel, over eight months after the accident, plaintiff testified he could not recall any of the facts of the collision, but two months subsequent to the accident, he described it in detail to Mr. Irion and also gave like description of it when the settlement was made. When the case was tried on the merits, three months after trial of the plea of estoppel, and nearly twelve months after the accident, plaintiff was able to give a vivid account of it.

The testimony of Munsey, corroborated by that of Mr. Irion, convinces us that the release, if not read by Mrs. Brewster, was at least inspected by her and then read aloud and explained by Mr. Irion before it was signed; and that all present understood its purport and effect. Mrs. Brewster, when asked what was said when Messrs. Munsey and Irion were discussing settlement with her husband, replied:

"A. I did not stay in there all the time. I was in the other little room. They came in there and said they would give him $35.00 to meet the condition of his wreck and he said he would not have it. They asked him what he would do and he said if they would give him $75.00 and $3.00 to pay out mine and my little girl's expenses that would be all right. They just wrote it out without another word. He said he was not entitled to pay any damage; that it was just a charity gift—he sure said it."

This answer certainly discloses that plaintiff was then in condition to intelligently talk business, and that his wife understood perfectly the terms of the settlement.

Aaron Burkitt, the driver of the smaller truck died from the injuries to him by the collision. Some members of his family visited plaintiff in the sanitarium the day the compromise was effected. They had just left when Munsey and Irion arrived. They endeavored to persuade plaintiff to bring suit against defendant, but he refused. He told Mr. Munsey that he did not want any litigation. This indicates clearly plaintiff had been thinking of a settlement out of court.

The testimony of Dr. Benton is conclusive that plaintiff was not under the influence of any opiate or other drug that would prevent, or materially affect, free thought by him, when he consented to the settlement he now seeks to set aside. He was not then suffering much from pain. He is illiterate and accustomed to hard labor for a living, but has had considerable practical experience in dealing with laboring people and business men. Dr. Benton said he well knew right from wrong.

We do not think any of the serious charges made by plaintiff in his attack on the validity of the compromise agreement are sustained by the evidence. No persuasion, duress, force, or coercion were resorted to to induce him to settle his claim, and if there was any "cajoling" employed to influence him, no one present seems to know of it, not even Mrs. Brewster.

W. A. Gray, a neighbor of plaintiff, testified that on Friday or Saturday following the accident, plaintiff came to his home and purchased some chickens and a pig, and while there, told him all about the collision; also told him that he had "settled with them, but he said he had something severe when he settled and he was going to try to get some more." This statement reflects plaintiff's real purpose in accepting the money coming to him from the compromise and then instituting this suit. It was made at a time and under circumstances not suspicious.

Plaintiff left the sanitarium the day following the settlement. If he had been imposed upon, or did not understand what he had done, or if his wife, who was present and witnessed the transaction, felt that he was not being fairly treated, or was not mentally in condition to contract, they had ample time and opportunity to recede from the agreement before collecting the draft, causing the status quo ante to be restored; but instead of

pursuing such a cause, the draft was collected, the proceeds used by plaintiff, and no offer to return the amount has been made.

The lower court was of the opinion that the denial of liability to plaintiff by the insurance company's representatives influenced him in the decision to accept the settlement agreed upon, and that he acted without full knowledge. So far as the facts are concerned, plaintiff knew all of them. He was in the collision and witnessed how it happened. Whether or not defendant's negligence was responsible for the injuries plaintiff suffered as a result of the accident is a question of law to be arrived at from a knowledge of the facts. Plaintiff's right of action against defendant, if there was liability, was a legitimate subject of compromise. He did not know, nor could any one else at that time definitely tell, that he could succeed in a suit for damages. If he had a cause of action, not knowing he had one, and chose to compromise, while ignorant of his rights, the error was one of law from which there is no relief.

Paragraph 2 of article 1846 and article 3078 of the Revised Civil Code are clear on this point.

"2. A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law."

"3078. Force and effect of transaction—Errors in calculation.—Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."

The case of Russ v. Union Oil Company, 113 La. 196, 36 So. 937, 940, in many respects is on all fours with the instant case. There plaintiff had employed eminent counsel to prosecute his claim for damages. He was offered $10 and other inducements to settle his case, refused the amount, but did accept $20 and the other considerations, being running wages while disabled, in compromise of his claim for damages against the defendant. He repudiated the compromise, tendered back the $20 paid him, and instituted suit for $5,000. He recovered judgment for $425. The Supreme Court held the compromise valid, and in doing so said: "There is no rule of law, morals, or ethics which denies to the ordinary citizen the right to compromise, with the person asserting it, a claim against him for damages, nor is that right defeated by any previous employment of counsel to prosecute such claim; and, when the compromise is effected in the manner provided by law, it has the force of the thing adjudged, and cannot be attacked collaterally, or for error of law or lesion, in a direct action. Civ. Code, arts. 3071, 3078–3080; Adle et al. v. Prudhomme, 16 La. Ann. 343; Ackerman v. McShane, 43

La. Ann. 507, 9 So. 483; Oglesby v. Attrill, 105 U. S. 605, 26 L. Ed. 1186."

In the case of Young v. Glynn, 171 La. 371, 131 So. 51, 52, the questions of fraud, error, and lesion, in an act of compromise were discussed and passed upon. Plaintiff, thinking and believing injuries to his leg would be well in 20 weeks, compromised the dispute between himself and defendant, his employer, on that basis. The affliction of the leg grew worse and it was finally amputated. The court held the compromise valid and binding, and that it could not be set aside for error of law, and that the inadequacy of amount received by plaintiff could not be inquired into; there being no element of fraud or misrepresentation in the confection of the agreement. We quote from this opinion:

"For it is clear that in every compromise there must be uncertainty and therefore error on the part of both parties as to what may be due, otherwise there would be no ground for compromise. * * *

"For it is of the nature of a compromise that it cannot be attacked on the ground of lesion, that is to say, for failure to receive all that one may be entitled to. Rev. Civ. Code, arts. 3078, 1860. In other words, in every compromise the hope of gaining is always balanced by the danger of losing. Rev. Civ. Code, art. 3071."

Chief Justice O'Niell, in Hill v. Hill et al., 173 La. 574, 138 So. 107, 108, discussing the act of compromise attacked in that case, made the following pertinent statements bearing upon the nature and binding effect of such contracts when freely entered into: "A compromise settlement is intended not to bring about a decision of the questions of law in dispute, but to pretermit them. That is why article 1846 of the Civil Code, which declares that a contract may be annulled for an error of law, as well as for an error of fact, if the error was the only or principal cause or motive for the contract, contains the proviso: 'A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law.' Article 3078 also declares that a transaction—meaning a compromise settlement or agreement—is not subject to annulment for an error of law, or for lesion. See, also, Buckelew v. Wyche, 162 La. 67, 110 So. 91."

This court had before it in Sly v. New Orleans, T. & M. Ry. Company, 142 So. 276, a question almost identical with that in the present case. The act of compromise was upheld. In that case, it appeared, as in the present one, that plaintiff fixed the amount of the settlement, received check therefor, collected same, and retained the proceeds. The syllabus of the case, reflecting the court's holdings, is as follows:

"Evidence held insufficient to establish that

release of cause of action for personal injuries was obtained through fraud.

"Release of cause of action for personal injuries cannot be set aside on ground of absence of sufficient consideration, especially where claimant does not offer to return consideration paid (Civ. Code, art. 3078).

"Release of one codebtor in solido, without express reservation of rights against other, held release and discharge of both (Civ. Code, art. 2203)."

■ Fraud is never presumed. It is a charge easy to be made, but generally difficult to prove. He who alleges it carries the burden of substantiating, by legal and adequate proof, the truth of the charge.

We recently considered a compromise of a claim for personal injuries in the case of Beck v. Continental Casualty Company, 145 So. 810, 811. In that case the act of compromise was not directly attacked by plaintiff's petition. A plea of res judicata was sustained. In passing, we said: "The law in its wisdom, and out of a solicitude to end or avert threatened litigation, encourages the settlement of disputes by compromise, and does not sanction the solemn acts of contending parties settling their disagreements being lightly brushed aside, unless there be present evidence of bad faith, error, fraud, etc. If such were not the law, there would be little incentive to any one to part with anything of value in the desire to escape the harassments of litigation. A compromise agreement, when freely entered into, is intended to have the binding effect of the thing adjudged. The law has ordained that such transactions have the dignity and force of a definitive judgment, in so far as definitely and irrevocably fixing the rights and liabilities of the parties thereto, as relates to the subject-matter dealt with. It is simply the act of the parties determining their own liabilities and obligations, instead of the court."

Counsel for defendant stress the assertion accredited to Munsey by Mrs. Brewster that the amount paid to plaintiff was simply a "gift," and that he was misled thereby. If we understand plaintiff's present contention, he was not in physical or mental condition to understand anything about the discussions culminating in the compromise. If that be true, he could not have been misled by this statement, if made. Gauged by defendant's theory of the case, the amount paid plaintiff was in the nature of a donation, for certainly no liability to him was admitted. That question was the main one terminated, and sought to be terminated, by the settlement. If defendant had admitted liability to plaintiff, there would have been nothing left to compromise, save the amount of damages due. The compromise pretermitted both questions and closed the door to future inquiry concerning them.

Plaintiff's counsel quote at length from Brandon et al. v. Gottlieb et al., 8 La. App. 415, and Id., 16 La. App. 676, 132 So. 283, in support of their contention that this compromise agreement should be annulled on the ground of error and fraud. Plaintiffs succeeded in that case because they were induced to accept an inadequate amount in settlement of their damage claim arising from the negligent death of their son and brother, before they knew, or were given, the true facts of the death of the boy. We find no fault with that decision, but it has no real bearing upon the case at bar, where, as we have heretofore stated, plaintiff knew all the facts attending his injury.

The case of Reed v. Daniel W. Holderith, 3 La. App. 378, is also relied on by plaintiff. Error of fact and imposition amounting to fraud were established in that case, and the court properly annulled the purported act of compromise urged by defendants in bar of plaintiff's suit. Other cases cited by plaintiff are easily differentiated from the case at bar.

For the reasons herein assigned, the judgment of the lower court is reversed and set aside, and there is now judgment for defendant sustaining the plea of estoppel filed by it herein, and dismissing plaintiff's suit and rejecting his demand, with costs.