### SPEARS et ux. v. ST. CHARLES DAIRY, Inc., et al.

### No. 17315.

Court of Appeal of Louisiana. Orleans.

March 25, 1940.

Rehearing Denied April 22, 1940.

I. E. Uzzo and M. C. Scharff, both of New Orleans, for appellants.

Edward Rightor, W. H. Sellers, and George S. Graham, all of New Orleans, for appellees.

JANVIER, Judge.

Elizabeth and Porter Spears are the surviving parents of Leon Spears, their nine-year-old son, who they allege, died as the result of being struck by a motor truck of defendant, St. Charles Dairy, Inc., while he was "pushing or riding his 'skooter' on a roadway in this city". They charge that the accident resulted solely from negligence of the driver of the truck in certain particulars set forth in their petition and they assert the nullity of a certain written agreement of compromise under the terms of which, for $150.00 cash, they abandoned all rights to claim any other sum for the death of their said son. They pray for judgment not only against St. Charles Dairy, Inc., but, alleging that Employers' Liability Assurance Corporation is the liability insurance carrier of the said principal defendant, they pray for judgment against the said insurance company.

They base their charge that the said compromise agreement is a nullity, and their prayer that it be "cancelled" and "avoided", on the following allegations: "* * * that on the very day of the death of their said son and while the body of their said child was being prepared for burial, even before the said child had been embalmed, a representative of the St. Charles Dairy, Incorporated, called upon them to discuss a settlement of their said claim. Petitioners were very poor and were at that time, mentally incapacitated, because of the grief and sorrow thrust upon them, by the untimely and unexpected death of their only child; petitioners were unable to think or reason at that time and upon the representations of said representative, of the said defendant, that they were not, under the law, entitled to anything or any sum whatsoever, and that they had better accept the sum of One hundred fifty and no/100 ($150.00) Dollars, which he offered and which would aid them in the burial of their son, or get nothing, your petitioners accepted said sum and

signed some document which was placed before them, by said representative, but which petitioners did not at the time know or understand what it contained."

They further allege that the said "document" was obtained by fraud and misrepresentation and that "the consideration therefor was so inadequate as to amount to no consideration."

By supplemental petition filed as the result of exceptions presented by defendants, they allege that they tendered to the St. Charles Dairy, Inc., restitution in the sum of $150, which amount they had received as the result of the execution of the agreement of compromise.

Defendants deny all of the essential allegations concerning negligence on the part of the operator of the truck, or of the owners thereof, and particularly deny that there was any fraud or misrepresentation involved in the negotiations leading to the execution of the agreement of compromise, or in the execution thereof, and they assert that plaintiffs fully understood all the facts which were involved and well knew what would be the effect of the execution by them of the said agreement.

The only part of the agreement which we find it necessary to quote is that which recites that the payment is made and accepted in order to effect the release from liability for the results of an accident "* * * when one Leon Spears, * * while attempting to cross Toledano Street between Galvez and Johnson Streets in the City of New Orleans on a skate skooter, * * * ran in front of a certain Wells Fargo Truck, Motor Number T4935, owned by the St. Charles Dairy, Incorporated, * * * ".

When the matter came on for trial below it was agreed that since, if the compromise agreement should be held to be valid, there would be no necessity to present evidence touching upon the question of negligence, that issue—the validity or invalidity of the compromise—should be tried and decided in advance of the other issues. After a hearing limited to that question, there was judgment maintaining the validity of the compromise and dismissing the suit. Plaintiffs have appealed.

In the first place, the record shows that plaintiffs, in intelligence, are considerably above the average of members of the laboring class of negroes. Their answers to questions show this plainly, and the attorney who prepared the compromise agreement and who states that, at some length, he discussed with them their marital status and other details necessary to the preparation of the agreement, says that "* * * they impressed me as having an intelligence above the average of colored people. They can read and write, they can express themselves; they did in my office that day, very intelligently; they knew what was taking place."

This attorney also stated that, during the following week, some three or four days after the agreement had been executed, the mother of the little boy came to see him to have him, as notary, affix his jurat to certain claim blanks involving insurance and that at that time she made no complaint whatever about the compromise agreement.

It also appears that the plaintiffs were not sought out by a "representative" of the dairy company, as they allege, and were not importuned to agree to the settlement, but that, on the contrary, they initiated the negotiations and persisted therein until the consummation of the agreement. This was conceded by counsel for plaintiffs.

■ But counsel maintain that they signed the agreement as the result of an error of fact into which they fell because of statements of the president and manager of the dairy company and as the result of a similar erroneous statement of fact contained in the document evidencing the settlement and which alleged erroneous statements were to the effect that their young son had himself been at fault in pushing his "skooter" in front of the oncoming truck.

If these statements are, in truth, errors of fact—and there is nothing to show that they are—it is very evident that the statement attributed to the manager did not induce them to execute the agreement because they did not act until they had made their own independent investigation of the occurrence.

Porter Spears, the father, states that, in company with a police officer who was making an investigation, he interrogated a "lady" and that she said that she had seen the accident and that he (the little boy) ran across the street in front of the truck. Later in his testimony, when the release was read to Spears and he was asked if it contained any statement "which you say it not true", he answered: "No, sir, there ain't anything * * *. That's the way I learned it."

In other words, he himself investigated and "learned" the facts just as they were set forth in the release, and still later he testified that the manager of the dairy company had told him just what he was told by the others who were on the scene.

■ The record shows conclusively that, when Spears called voluntarily and requested a settlement, he was told that he must talk the matter over with his wife and obtain her consent and that he brought her back with him, and, in the presence of two friends and also in the presence of the colored undertaker, discussed the matter and, without any urging on the part of any representatives of defendants, or either of them, agreed to accept the amount.

It further appears that even then they were given further time to reconsider, for they were required to go to the office of the attorney for one of the defendants, who again discussed the matter with them and then prepared the agreement and read and explained it to them, and that then— and not until then—did they sign it and accept the amount agreed upon. There is not the slightest suggestion of fraud or misrepresentation on the part of the defendant dairy company and it is conceded that no representative of the insurance company played any part whatever in effecting the settlement.

Counsel for plaintiffs, with commendable frankness, made the following statement, which appears in the record: "I am frankly of the opinion myself there wasn't deliberate deceit or fraud in this case."

Of what, then, can plaintiffs be heard to complain?

■ Compromise, or transaction, as it is sometimes called, is authorized by Article 3071 of the Revised Civil Code, which reads as follows: "A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing."

It is favored in the law, as stated in Tulane Law Review, Volume 14, page 282, "Compromise in Louisiana": "* * * The law favors this formal method of adjusting differences, since it is to the interest of the state that there should be an end to or an avoidance of litigation."

See, also, Rabun v. Pierson, 23 La.Ann. 696; Young v. Barelli, 169 La. 319, 125 So. 258; 12 C.J. 336-337, sec. 32; Troplong, Droit civil explique, Du Cautionnement II, No. 2, pp. 549, 550.

■ Counsel makes much over the fact that only $150 was paid, whereas, if there was liability in defendants, a judgment for many times that amount would probably have resulted. But this does not justify rescission of such a transaction, for Article 3078 of our Code provides that such an agreement "can not be attacked on account of any error in law or any lesion." As is well said in Tulane Law Review (supra), at page 289: "Lesion is not a cause for rescinding a compromise. Nothing would be more prejudicial to the public interest than to permit the parties to withdraw on such a ground, since it is impossible to prove lesion and to determine in whose favor the lawsuit would have terminated."

See, also, Young v. Glynn, 171 La. 371, 131 So. 51; Duranton, Cours de droit Francais XVIII (4th ed, 1844) No. 412, pp. 442-445; Troplong, Droit civil explique, supra.

■ If it be conceded that, because of the provisions of Article 3079, which permits a rescission when "there exists an error * * * on the matter in dispute", a transaction for error of fact, may sometimes be rescinded, no such relief could be obtained here since there was no such error of fact. The only error of plaintiffs was in their conclusion concerning their legal rights and which conclusions were based on their own investigation of the facts. There is nothing whatever in the record to show that they were in any way in error as to the facts, which they themselves ascertained.

■ There are cases, none of which have been cited, which hold that, where the bereaved parents are importuned to effect a settlement for an unreasonably small amount at a time when it is obvious that their mental condition does not permit of their thinking clearly of the results of their actions, such a settlement may, under such unusual circumstances, be rescinded. But the facts of this case in no way bring it within that doctrine.

■ In oral argument, counsel for plaintiffs intimated that, since the settlement was made by only one of the defendants, it should not be availed of as a bar to the action against the other. Where a settle-

ment is effected in favor of one of two or more solidary obligors, without a reservation of rights against the other or others all are discharged, for, in Article 2203 of the Revised Civil Code, it is provided: "The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter."

See, also, Sly v. New Orleans, Tex. & Mexico Ry. Company, La.App., 142 So. 276; Passera et al. v. United States Guarantee Company et al., La.App., 187 So. 345.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellants.

Affirmed.