## No. 1,345.

### JACQUES A. BOYER vs. VOLCEY AMET, WIFE, ETC.

The neglect or failure of the vendee to record his title does not release the vendor of his obligation of warranty.

The fact that the purchaser was aware of the defect of his vendor's title does not affect his right to recover the purchase price when evicted.

The fact that the purchaser buys the property at the sale by which he is evicted does not affect his right to recover his purchase price paid to his original vendor.

He does not, thereby, complete his defective title, but he acquires one entirely new and different.

In case of eviction the warrantor must restore the purchase price to his vendee, without reference to the enhanced or depreciated value of the property at the date of the eviction.

APPEAL from the Twelfth District Court, Parish of Avoyelles.
Coco, J.

*Thorpe & Peterman* for Plaintiff and Appellee:

1. A private writing containing neither description nor price, and being coupled with conditions to be performed, is not, as to others than the pretended vendor and vendee, a transfer of immovable property. 10 Ann. 613; 37 Ann. 751; R. C. C. Art. 1764, Sec. 1; 21 Ann. 196; 23 Ann. 699; 24 Ann. 85; 27 Ann. 529; 13 Ann. 361; 28 Ann. 725; 30 Ann. 1117; 34 Ann. 677; 5 South. Rep. 58.

2. A purchaser with express stipulation of warranty, can upon eviction recover from his vendor, though at the time of buying he was aware that his title was imperfect or that the thing sold belonged to another. 13 Ann. 381; 3 Ann. 326; 7 Ann. 268; 34 Ann. 648.

3. One evicted by mortgagee under an adverse title having an origin prior to the sale is not debarred by Art. 2502, R. C. C., from relief against his vendor, though the mortgage be subsequent to the sale. 9 Ann. 298.

.4. In eviction the measure of damages is the price paid to the vendor. R. C. C. Arts. 2505. 2506; 6 Ann. 297; 7 Ann. 268; 10 Ann. 137, 260; 14 Ann. 722.

5. Legal eviction does not require bodily dispossession; it takes place though possession continue, if it be under another right adverse to that of the vendor. 1 R. 362; 9 R. 283; 3 Ann. 326; 14 Ann. 716; 15 Ann. 514.

### *A. B. Irion* and *Cullom & Cappel* for Defendant and Appellant:

When the title to property sold at succession sale is cancelled by agreement, and the property is receded to the estate, it is the duty of the administrator and tutor of the minor heirs to see that a proper deed is executed and recorded.

If the administrator, who is also the tutor, fails to do so, he is responsible to the heirs for any damage that may follow from such neglect.

The administrator and tutor who, in such a case, purchases the ceded property from his former ward, cannot complain of the title arising from the retrocession, and if he be evicted by reason of the non-registry of the retrocession, he can not hold his former ward and vendor responsible for his eviction.

The claim under which plaintiff was evicted did not exist at the time, nor until long after the sale by defendant to him. The warranty of defendant did not cover any claim not in existence at the time of sale, and she is therefore not responsible to plaintiff for any rights arising through no fault or fraud of hers subsequent to the sale, and is, therefore, not responsible to plaintiff. C. C. 2502; Marcadé, vol. 6, p. 251; Pothier on Sales p. 54.

The plaintiff received from defendant the same title which he as the administrator and tutor received for her. He must be regarded as aware of the status of her title and as a party thereto, and he cannot complain of any defect therein, which may have resulted to his injury.

The opinion of the court was delivered by

POCHÉ, J. Defendant appeals from a judgment which condemned her to restore to plaintiff the sum of $3200 as the purchase price of a tract of land which she had sold to him in December, 1885, and from which he had been evicted under the effect of a judgment rendered by this court in the case entitled J. A. Boyer vs. L. A. Joffrion, sheriff et al., reported in the Thirty-eighth Annual Reports, p. 657; and by which she was also condemned to refund to plaintiff the additional sum of $277 05 for costs and other expenses incurred by him in said litigation, which involved the validity of the title transferred to him by defendant.

The substantial facts of the case are as follows:

The property involved herein originally belonged to the succession of

defendant's mother, Palmyre Boyer Amet, which was administered by the present plaintiff. At a succession sale thereof the property was adjudicated to a stranger who immediately thereafter sold it to A. L. Boyer, a brother of plaintiff, an uncle of defendant, and at that time the tutor of one of the minor children of the deceased.

Some time after she became of age, defendant brought suit against the two Boyers, involving plaintiff's administration of her mother's succession, and the acts of tutorship of both of the Boyers as co-tutors of herself and minor sister and brother.

By mutual consent their differences were · submitted to arbitration, and the litigation was thus terminated.

Now it appears that the validity of A. L. Boyer's purchase of the tract of land in question had also been involved, and that as part of the adjustment of the differences then existing between the parties, Boyer acknowledged the nullity of his purchase, and agreed to retrocede the property thus acquired by him to the heirs of the succession.

To that effect the act of submission contained the following declaration or article:

"That A. L. Boyer returns to the said heirs the thirty-seven and a half acres of land bought by him in 1878, and that the said sale to him is hereby annulled, reserving to said A. L. Boyer all rights he had or may have had at the time of the sale of said land."

This occurred in November, 1881, and shortly thereafter, through the death of her brother and sister, defendant herein became the sole heir of her mother's succession, and as such she went into the exclusive possession of said land.

In December, 1885, she sold it, with full warranty, to the present plaintiff, for $3200 cash. That sale was immediately recorded in the proper office, but no registry was made of the retocession of A. L. Boyer to the heirs of Palmyre Boyer Amet, defendant's mother.

In May, 1886, A. L. Boyer, in whose name the property yet apparently stood in the records, mortgaged it to a third party, who issued executory process on his mortgage in 1888.

His proceedings were enjoined by Plaintiff J. A. Boyer, who called his vendor in warranty. But the call was dismissed on exceptions.

The result of the litigation was the enforcement of the mortgage granted by A. L. Boyer, and at the sheriff's sale thereunder the property was adjudicated to J. A. Boyer, the present plaintiff, for the sum of $1800.

The defense presents for discussion three points which may be summarized as follows:

1. That plaintiff who was, at the time of the retrocession from A. L. Boyer to the heirs of Mrs. Amet, the administrator of the succession, was made aware of the nature of defendant's title, the only defect of which was the failure of registry, which it was his duty to have recorded, first as administrator, and next as purchaser.

2. That plaintiff's title was anterior in date to the mortgage granted by A. L. Boyer, and that, therefore, he cannot recover his purchase price.

3. That in any event the evicted vendee cannot recover more than the amount paid to complete his title.

## I.

The article in which A. L. Boyer acknowleged the nullity of his title was not a matter between himself and the succession or its administrator, but it grew out of an agreement between himself and the heirs directly, in a litigation instituted by the defendant herself, who was then of full age and acting in her own right. The retrocession, so far as it went, was not to the succession or its representative, but it was made for the benefit of, and directly to, the heirs themselves, who thereunder were placed in possession without the intervention or assistance of the administrator. The adjustment of the latter's account of administration was the subject-matter of other and different stipulations in the act of submission, and was effected by the award of the arbitrator. Hence it was no part of the duty of the administrator to see to the registry of the retrocession, or to attend to its completion.

A decision of the question of the legal effect of A. L. Boyer's declaration, hereinabove quoted, and relied on by defendant as a retrocession of the property, would not be free of difficulty, when considered in connection with the absence therefrom of the adjudicatee, who was Boyer's vendor, in connection with the fact that it contained no description of the lands which it purported to reconvey and with other defects of the forms required in an act to be translative of title. But fortunately the purposes of this cause do not require a solution of these difficulties.

Conceding, therefore, that the declaration operated legally as a retrocession of the property, and effected a mutation of title, the sole defect of which was the failure of a proper and timely inscription so as to give it effect as to third parties, the question now recurs whether the failure or neglect of plaintiff to secure an inscription of this act, after his purchase in 1885, can defeat his right to recover the purchase price as evicted vendee.

It must first be premised that, if the neglect of a vendee in this regard

can be treated as laches on his part, the defendant herself has much to account for, as it appears that she allowed her own title to linger without inscription from the time that she recovered the property, November, 1881, until she sold it to plaintiff, in December, 1885.

But, as applicable to the rights of an evicted vendee, the question has been settled by authority. It came up in the case of Clark vs. O'Neal, 13 Ann. 381, in which the court said : "The mere fact that the vendee had neglected to record the act of sale did not release the plaintiff from her obligation to warrant the title."

In point of fact, the sale to plaintiff by the defendant was properly inscribed, and hence he stands before the court as an evicted vendee unaffected by any laches in connection with the non-registry of his, or of his vendor's, titles. And we can but repeat in this connection that she alone is amenable to the censure which she addresses to her vendee.

The contention that plaintiff's right to recover is defeated by the fact that he had full knowledge of the defect in his vendor's title, finds no support either in law or in the facts of the case.

According to defendant's own theory, the only defect in the title which she transferred to plaintiff was the lack of registry of A. L. Boyer's declaration in the act of submission, which she holds up as the muniment of her title, which was considered as such by all the parties to the various transactions, and which we have conceded, for the sake of argument, to have had that effect.

Now there is not an *iota* of evidence to show that her purchaser ever knew or even suspected that the evidence of her title had never been registered. And there is no warrant in law to justify the presumption that he had such knowledge. On the contrary, the fact that he paid a full cash value for the property is strongly suggestive of the reverse.

But, conceding that he was aware of that defect, does such knowledge militate against his right to recover his purchase price after eviction?

That question likewise finds a negative answer in our jurisprudence. It was presented in the case of Hall vs. Nevill, 3 Ann. 326, and it was solved as follows :

"Evidence was offered at the trial to prove that, prior to his purchase, Nevill knew that the title to the 160 acres was defective. This testimony was immaterial, and was properly rejected. It would not debar the defendant from resisting payment pro tanto." * * * "That right exists even where there was knowledge on the part of the buyer, unless excluded by a stipulation of non-warranty, and when the purchaser has expressly bought at his own risk and peril."

The rule, as thus expounded, results clearly from the provisions of the

code on the subject. The only legal right of the buyer which can be affected by that knowledge is that to recover damages. C. C. 2452.

But neither contingency arises in this case, which shows that the sale to plaintiff was made with full warranty.

## II.

The error of defendant's contention on the second point of discussion originates from a confusion of ideas in the application of the provisions of Article 2502 of the Civil Code to the facts of the case on this point. The article reads:

"That the warranty should have existence, it is necessary that the right of the person evicting shall have existed before the sale. If, therefore, this right before the sale was only imperfect, and is afterwards perfected by the negligence of the buyer, he has no claim for warranty."

The argument is that the claim of warranty is debarred by the fact that the mortgage of A. L. Boyer to Artigue was subsequent in date to the sale of defendant to plaintiff.

But the eviction was not effected by the mortgage; it resulted from the right of ownership to the property in Boyer as to third parties by reason of the failure to inscribe his act of transfer to defendant. Dudelf vs. Boykin, 9 Ann. 298.

## III.

As the property was purchased by the evicted vendee himself, defendant's counsel contend that he thus perfected his title, and hence he should recover no more on the warranty than the amount thus and therefor disbursed. Under the effect of that sale his eviction was as complete as if the adjudication had been made to a stranger, and he had subsequently purchased the property from the latter.

The title which he thus acquired is entirely different from that which he had obtained from defendant. He thereby acquired the title of A. L. Boyer, and he no longer owns or holds the property by virtue of defendant's sale to him. Hence he cannot be said to have completed his original title, since that which he there acquired is a new one, and springs from an entirely different source. Landry vs. Gamet, 1 R. 362; Succession of Coxe, 15 Ann. 514.

Hence it must be held that his right of recovery under the warranty is unaffected by the incident that he himself became the purchaser at the sale under which he was evicted as defendant's vendee.

The textual provisions of the code which determine the measure of his recovery are as follows:

"When there is a promise of warranty or when no stipulation was made on the subject, if the buyer be evicted, he has a right to claim against the seller:      .

1. "The restitution of the price.          ,

\*          \*          \*          \*          \*          .\*          \*          \*          \*          \*

3. "All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the origial plaintiff."     \*     \*     \*
C. C. 2506.

Under the provisions of the code of 1808 the evicted vendee was entitled to receive from his vendor the enhanced value of the property from which he was evicted. But since that provision was eliminated from our legislation, the rule has been that the warrantor should restore to the evicted vendee the purchase price without reference to the enhanced or depreciated value of the property at the date of the eviction.                                         .

The question was finally set at rest by this court in the case of Burrows vs: Peirce, 6th Ann. 295, in an elaborate and learned opinion from which we transcribe the following apposite language:

"But if the rule of the Civil Law is adopted, the vendee gains all the increasing value of the property, there being no defect in the title ; and yet could lose nothing, for having, like his vendor, failed to discover the defect, if any existed; whilst the vendor, for the same misfortune, would lose not only the price received, but the increasing value of the property, without the 'possibility of participating in it under any circumstance.  Again, if the thing sold has greatly depreciated in value far below the price received, still the price paid is to be restored, in case of eviction, by the express provision of the article of our code; showing clearly that an ever varying rule could not have been contemplated by our Legislature, and that in place thereof they have established a fixed rule for every case." See also Quillan vs. Yair, 20 Ann. 260.

In the present case the inference is warranted that the property had greatly depreciated in value, but under the provision of the code as wisely expounded in jurisprudence, the right of recovery of the evicted vendee cannot be measured by that circumstance, no more than a claim for the excess on his part if it had happened that the property had brought more than the amount disbursed by him as the price of his purchase from the defendant, could have been sanctioned.

Under the provision of the code he was also entitled to the reimbursement of the costs and expenses incurred by him in defending his vendor's title, after due notice to, and authorization, from her.

Hence we find no error in the judgment appealed from, which has

done justice, although the case is one of great hardship to defendant under the peculiar combination of unfortunate circumstances to which she is a victim. But painful as the task may be in certain cases, courts must obey and enforce the law as it is written, and in harmony with established precedents.

Judgment affirmed.