Dr. Leo J. Schoeny has sued Dr. Spencer B. Lake for the alleged balance due on a contract entered into by and between them on July 11, 1930, whereby Dr. Schoeny sold to Dr. Lake, for the sum and price of $4,000, certain described fixtures, furniture, apparatus and instruments situated in the Palace Drug Store building in Donaldsonville, Louisiana. At that time Dr. Schoeny was practicing the profession of dentistry in Donaldsonville and desired to move to New Orleans. Dr. Lake was then living in New Orleans and wished to move to Donaldsonville to practice dentistry. Hence, on July 11, 1930 the two dentists entered into two contemporaneous contracts. In one of these contracts Dr. Schoeny sold to Dr. Lake a quantity of fixtures, furniture, apparatus and instruments "now located in the office presently *Page 110 
used and occupied by the vendor in the Palace Drug Store Building on Mississippi Street, in the City of Donaldsonville, Louisiana," for the sum of $4,000. Dr. Lake made a down payment of $500, and for the balance of the purchase price, to-wit, $3,500, he executed and delivered to Dr. Schoeny his twenty-three promissory notes, dated the day of the sale, numbered from 1 to 23, inclusive, each for the sum of $150 save note number 23, which was for the sum of $200, said notes being payable in their numerical order on the 15th day of each month beginning August 15, 1930 and stipulating to bear interest at the rate of 6% per annum from date until paid. These notes were secured by vendor's lien and mortgage on the personalty transferred, the act containing the usual and customary provisions and stipulations contained in credit sales. The twenty-three notes were paraphed by the officiating notary for identification with the sale. As a further consideration of the sale, on the same day the two dentists entered into another agreement, whereby, among other things, Dr. Schoeny transferred to Dr. Lake his practice in the City of Donaldsonville and the good will of his business, and agreed to assist Dr. Lake in certain specified ways in establishing himself in Donaldsonville.
Shortly after consummating the deal Dr. Lake paid Dr. Schoeny $150 on account of the purchase price. The next payment was made on or about July 7, 1932, and was for $20. Thereafter, Dr. Lake made payments to Dr. Schoeny on various dates in amounts ranging from $10 to $100, during the period commencing August 11, 1932 and ending February 14, 1939. Then Dr. Lake refused to make any further payments, and Dr. Schoeny filed suit against him to recover the sum of $1,140, being the alleged balance of the purchase price, with interest thereon at 5% per annum from July 11, 1930 until paid and with interest at the same rate on $2,860 from July 1, 1930 until December 31, 1935. However, at the beginning of the trial Dr. Schoeny reduced his claim to $1,090 with interest as aforesaid, acknowledging receipt of $50 more than was shown on his statement filed in evidence. The defendant resisted the suit on the grounds: first, that there was partial failure of consideration due to his being evicted from the possession of certain articles evaluated in the sale at $1,002.23; and, second, that subsequent to the consummation of the two contracts Dr. Schoeny had, for a valuable consideration, waived the accrued and accruing interest on the notes, and hence none was due.
The defendant filed in the District Court an exception of vagueness and exceptions of no cause and no right of action. The exception of vagueness was met by the filing of an amended and supplemental petition by the plaintiff, and the exceptions of no cause and no right of action were abandoned. On the day of the trial the defendant tendered to the plaintiff the sum of $87.77 plus 6% per annum interest thereon from the time that said $87.77 was due and payable which tender plaintiff refused. The case was then tried on its merits and resulted in judgment in favor of the plaintiff and against the defendant for the amount tendered with interest as aforesaid, otherwise rejecting the plaintiff's demands, costs to the time of tender to be paid by defendant and all other costs to be paid by plaintiff. The plaintiff has appealed from this judgment.
The defendant has filed in this court a plea of prescription of five years on the ground that this claim, being actually founded upon the last nine notes of the said series, being numbers 16 to 23, inclusive, has become prescribed and the defendant's obligation extinguished. The defendant also asks that the judgment appealed from be amended so as to decree that notes numbers 15 to 23, inclusive, be cancelled.
 Plea of Prescription
We shall consider first the plea of prescription of five years. The plaintiff sued on the contract rather than on the promissory notes identified therewith on the theory that his suit on the unpaid promissory notes might be prescribed by five years under Article 3540 of our Revised Civil Code, whereas the suit for breach of contract would only be prescribed by ten years under Article 3544 of the said Code. He cited as his sole authority for this procedure Boelte v. West, La.App., 185 So. 471. In that case the Court of Appeal for Orleans said that the holder of a note who is a party to the contract, may, at his option, sue on the contract, if it is breached, or sue on the note if it is unpaid. Suit was brought on a note executed in connection with a contract between LaSalle Extension University, assignor of the plaintiff, Boelte, the note evidencing the amount to be paid *Page 111 
under the contract for an extension course which West agreed to take. As suit was brought on the note in the Boelte case, obviously what the court said relative to the payee's right to elect to sue on the note or on the contract was obiter dictum. However, the court cited La Salle Extension University v. Thibodeaux, La.App., 155 So. 53, where suit on a similar contract to the one in the Boelte case was upheld. We do not think these cases are applicable.
Articles 3284 and 3285 of our Revised Civil Code state:
Article 3284: "The mortgage is accessory to a principal obligation which it is designed to strengthen, and of which it is to secure the execution."
Article 3285:
"Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a principal debt to serve as a foundation for it.
"Hence it happens, that in all cases where the principal debt is extinguished, the mortgage disappears with it.
"Hence also it happens that, when the principal obligation is void, the mortgage is likewise so; this, however, is to be understood with certain restrictions which are established hereafter."
In the cited case both the note and the contract were the primary obligations of the named defendant, whereas, in the instant case the principal obligation to pay the balance of the purchase price of the equipment was represented by the twenty-three promissory notes executed by Dr. Lake. The vendor's lien and mortgage are not "principal obligations"; they are accessory to the notes which evidence the principal obligation. R.C.C. Article 3284. If the principal debt is extinguished, the mortgage and vendor's lien "disappear" with it. R.C.C. Article 3285; State ex rel. Landry v. Broussard, La.App., 177 So. 403; Holland v. Gross et al., La.App., 195 So. 828, 835.
But we do not think that the amount due by Dr. Schoeny to Dr. Lake is prescribed. It is agreed that during the period commencing July 7, 1932 and ending February 14, 1939, monthly payments have been made by Dr. Lake to Dr. Schoeny aggregating $2,410. It is also agreed that this amount has been applied on the principal and that nothing has been paid on the interest. Although the debt due by Dr. Lake to Dr. Schoeny was divided into twenty-three installment notes, there was only one debt. Eyle v. Roman Catholic Church, etc., et al., 36 La.Ann. 310; Vinet v. Bres et al., 48 La.Ann. 1254, 1260, 20 So. 693. See also comments in 14 T.L.R. 438. Each of the payments on the indebtedness interrupted prescription and the last payment having been made only about a year prior to the filing of this suit, the indebtedness is not prescribed, and accordingly the plea of prescription is overruled.
 On the Merits
Included in the act of sale are the following articles with the values placed thereon by the parties at the time the sale was consummated, to-wit: One 4 1/2' drop awning, $2; two 4 1/2' green sun shades, $4; five 3' green sun shades, $10; two lavatory benches and cabinets, $25; one set of plumbing fixtures, one set of electrical fixtures and partitions, $909; linoleum, $52.23. These amounts total $1,002.23. The defendant claims that there was a total failure of consideration for these particular articles since he has been evicted as to them. Therefore, the question presented is whether plaintiff has failed to deliver these articles to defendant, or whether defendant has been evicted therefrom, entitling the latter to a reduction of $1,002.23 on the purchase price. This question presents a mixed question of law and fact.
As held by the trial court the articles referred to were installed by Dr. Schoeny, but there is a serious dispute as to what agreement was entered into at the time of their installation between Dr. Schoeny and the late Charles Oschwald, the owner of the Palace Drug Store building. Dr. Schoeny contends that he was the owner of these articles and as such had a perfect right to sell them to Dr. Lake. On the other hand, Dr. Lake contends that when he tried to take possession of the articles in question, as owner, Mrs. Oschwald, the widow of the late Charles Oschwald, claimed their ownership and refused to let him remove them from the building. At the trial Mrs. Oschwald testified that these articles belonged to her. It is also clear that Dr. Lake did not know at the time the sale was consummated that Dr. Schoeny's title was disputed by Charles Oschwald. When Dr. Lake learned of Oschwald's claim, he called Dr. Schoeny's attention *Page 112 
to the same, as appears from the correspondence between the two doctors.
The seller is obliged to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold. R.C.C. Article 2501. Where the buyer is evicted he has a right to claim against the seller, the restitution of the price. R.C.C. Article 2506. If the buyer is evicted from a part only of the thing sold, and if the sale is not subject to cancellation under Article 2511 of the Civil Code, then the value of the part from which he is evicted is to be reimbursed to the buyer according to its estimation, proportionably to the total price of sale. R.C.C. Article 2514. The fact that the thing sold has lost some of its value, or is considerably impaired, either through the neglect of the buyer, or by any providential acts or unforseen accidents, the seller is nevertheless bound to the restitution of the full price. R.C.C. Article 2507. However, if the thing sold was impaired by the buyer and he has reaped some benefit therefrom, the seller has a right to retain on the price, the amount to which such damages may be estimated in favor of the owner who evicts him. R.C.C. Article 2508. Certainly Dr. Lake has reaped some benefit from the use of the enumerated articles over a period of approximately ten years. The probability is that the awning and sun shades are worn out. The other articles are undoubtedly greatly depreciated in value. The value of these articles at the time of eviction does not appear.
The Court of Appeal for Orleans held in Peel, Auditor, v. St. Ann Villac et al., 3 La.App. 447, that the vendor of an automobile can be condemned to pay to his evicted vendee only the actual loss in money which the eviction has caused him, and not the original price of the automobile. That decision, however, is in conflict with the decisions of the Supreme Court in Burrows v. Peirce, 6 La.Ann. 297; Quillin v. Yair, 10 La.Ann. 259, 260, and Boyer v. Amet, 41 La.Ann. 721, 6 So. 734, and also with the decision of the Court of Appeal for the Second Circuit in Bryson v. Bates-Crumley Chevrolet Co., Inc., 171 So. 605. In discussing this question the Supreme Court said in the Boyer case [41 La.Ann. 721, 6 So. 736]: "In the present case the inference is warranted that the property had greatly depreciated in value; but under the provision of the Code, as wisely expounded in jurisprudence, the right of recovery of the evicted vendee cannot be measured by that circumstance, no more than a claim for the excess on his part, if it had happened that the property had brought more than the amount disbursed by him as the price of his purchase from the defendant, could have been sanctioned."
Obviously, the defendant has not been evicted as to those articles, if any, which are now entirely worn out, and hence as to them, the defendant is not entitled to a reduction of the purchase price. However, as to those articles which are only depreciated in value, we think that the defendant is entitled to a reduction of the purchase price. The evidence as to what articles are worn out is not clear, and, therefore, the case should be remanded to the District Court under Article 906 of our Code of Practice for the purpose of determining this fact.
The next question presented is whether the defendant owes interest at the rate of 5% per annum on the deferred payments aggregating $2,260. We agree with the trial judge that he does not.
The testimony shows that Dr. Lake borrowed enough money to make the down payment and to pay the first note. For several years thereafter his income was so small that he found it extremely difficult to make any payments whatsoever on account. There was a lapse of approximately two years between the payment of the first note and the next payment which amounted to $20 only. Some correspondence and conversations were had between the two dentists during that period, in which Dr. Schoeny was insisting upon payments being made on account and Dr. Lake was insisting that he was paying all he could. Dr. Lake testified that, finally, he and Dr. Schoeny agreed orally that if the former would take care of the dental requirements of Dr. Schoeny's family, who lived in Donaldsonville, Dr. Schoeny would waive the interest on the notes. This agreement was made in the Roosevelt Hotel in the year 1933 or 1934, according to Dr. Lake. Dr. Schoeny denies that any such agreement was ever entered into and offered in evidence several letters written by Dr. Lake, in which the latter acknowledged owing interest on the indebtedness. However, it is noted that all these letters were written prior to the date that Dr. Lake contends that the alleged oral agreement was made. Hence, they can have no bearing on the question. *Page 113 
Dr. Lake filed in evidence itemized statements showing that he rendered dental services to Dr. Schoeny's close relatives (his father, mother, sister, brother and two nephews) on various and sundry dates during a period of more than seven years, commencing in the year 1931 and ending in the year 1938, and for which he made no charge. There must have been some consideration for rendering these services without charge to Dr. Schoeny's relatives. We think that Dr. Schoeny must have thought it to his advantage to assist Dr. Lake in this way, fully realizing that because Dr. Lake was not yet established in his practice, and because of the depression period, Dr. Lake was unable to meet the payments as due. Dr. Schoeny was faced with the alternative of either making some concession relative to the payments or having to foreclose the mortgage with the strong probability of acquiring and having to dispose of all the equipment, furniture, etc., sold to Dr. Lake. Moreover, it was admitted by Dr. Schoeny that he had never collected any interest on the indebtedness, and it was proven that he surrendered the first fourteen of the series of notes to Dr. Lake marked "Paid" without even asking for the payment of interest. We think that these facts and circumstances prove that the two dentists did make the oral agreement whereby Dr. Schoeny waived interest on the notes as contended by Dr. Lake.
In this connection counsel for the plaintiff objected to the offering of parol testimony by defendant to prove the alleged oral agreement, citing Article 2276 of the Revised Civil Code, which states: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
In our opinion the parol evidence does not vary, modify or change the terms of the original written agreement. It is a subsequent, new and independent agreement, modifying the original agreement. It is well settled that parol testimony may be offered for this purpose. Parlor City Lumber Co., Inc. v. Sandel,186 La. 982, 173 So. 737; Tholl Oil Co., Inc., v. Miller et al.,197 La. 976, 3 So.2d 97.
For these reasons we think that the plaintiff is entitled to recover of the defendant the amount tendered ($87.77) plus the agreed value of those articles entirely consumed by wear, plus interest thereon from date of judicial demand.
The judgment of the District Court is hereby reversed and the suit is remanded to the District Court to proceed with in accordance with the views herein expressed. The cost of this appeal shall be paid by the appellee. The assessment of the costs of the District Court shall await a final determination of this suit.
Reversed and remanded.
Le BLANC, J., recused.