MONROE, J.
Plaintiff brought suit on three past-due promissory notes, amounting in the aggregate to $583; bearing interest at 8 per cent, per annum from August 1, 1909; signed by N. M. Davis and the defendant, C. C. Bridger, as makers; reading, “I promise to pay,” etc.; containing stipulations as to interest and attorney’s fees, and recitations to the effect that they were given for the purchase price'of certain machinery of plaintiff’s manufacture, “this day delivered to me,” the vendor’s privilege upon which is recognized; and to the further effect that the parties “waive presentment for payment, protest, and notice of protest, and agree that the holder may extend the time without notice, and without prejudice to his rights as to any of said parties.”
The petition alleges that the notes are subject to a credit of $150, paid June 21, 1909, and a credit of $500, as of date September 28, 1912, being the price at which the “separator” (one of the machines for the price of which the, notes were given) was returned by N. M. Davis, who had previously acquired the one-half interest therein of his comaker, . the defendant. The petition further alleges, and annexes, the contract for the sale of the machinery, and avers that, while the said O. C. Bridger did not sign the contract, he, subsequently — i. e., at the time of its delivery — became the owner of an undivided interest in the machinery, and,- in settlement for the.price, joined Davis in the execution of the notes.
The petition further alleges that Bridger owes the full amount of the balance due on said notes, being indebted therefor in solido with Davis, and it prays for judgment for said balance, with interest upon the whole debt and attorney’s fees, subject to the credits as stated.
Defendant admitted that he signed the notes, but alleged- that he did so as surety; further alleged that, when plaintiff received the separator from Davis, it -released him from all further obligation, and thereby released defendant, even though he had been bound in solido with Davis.
There was judgment in the district court, rejecting plaintiff’s demand, and it invokes the supervisory jurisdiction of this court for its relief.
The respondent judge says, in his return:
“According to the terms of the contract, the machinery was sold to Davis alone. There appears, therefore, to be a discrepancy between the allegations of the petition and the contract annexed thereto.”
❖ * * * * *
“Taking the notes alone, and, did they not refer to a contemporaneous contract, annexed to and made part of the petition, it might be urged that defendant was a principal; but, *757 construing the notes in connection with the contract, or the obligation upon which the notes are founded, the conclusion is irresistible that the primary obligation was assumed by Davis, and that the defendant was only secondarily liable.”
There is, however, no discrepancy between the allegations of the petition and the contract, since it is alleged:
“That, while said C. O. Bridger did not execute the contract hereto attached, subsequent to the execútion of said contract by said Davis the said Bridger became the owner of an undivided interest in said machinery, equipment, and attachments — that is to sajr, at the time delivery thereof was made by plaintiff — that all of said property.was delivered to and received by the said Davis and the said Bridger, and thereupon and in settlement thereof the said Davis and the said Bridger executed said notes as herein alleged.”
The fact that Bridger became the owner of an undivided half interest in the machinery is not denied in the return of the judge, and is shown by the evidence in the record, as follows:
S. L. Thompson, examined under commission, says, in his testimony:
“I went at once to Columbia, where I found Mr. Bridger. * * * I there presented the unpaid notes sued on in this cause to Mr. Bridger, as general signer of the notes. He explained, at some length, his bad success in growing rice, and stated that he had quit that game. He stated that he had sold his share or interest in the machinery (for which the notes sued on were given in part payment) to Mr. Davis, and that Davis agreed to pay the balance due on said notes. I told Mr. Bridger of my visit and discussion with Mr. Davis on the morning of that same day, and tried to get Mr. Bridger to go with me for a further interview with Mr. Davis; but he made his excuses for not doing so at that time. He promised, however, to see Mr. Davis within the next few days, and to write us, at Houston, Tex., the result of that conference, and state what arrangements, if any, he had succeeded in making for the payment of the balance due on the. notes sued on in this case. I explained to him that (we) were not a party to any sale of his interest in the machinery to Davis, and that the consent of the J. I. Case Threshing Machine Company was not asked or obtained by either of the parties to such sale, and that we would hold all parties who signed the notes until the debt was paid in full.”
We find also in the record, as part of the evidence in the casera letter, of date September 19, 1912, from Davis to plaintiff, in which the writer says:
“Mr. C. C. Bridger is on the note with me; the machine having been sold to myself and Mr. Bridger,” etc.
Confining ourselves to the record as returned, our conclusion as to the facts of the case is, that the machinery was sold to Davis & Bridger, and that the notes. for the price were made by them in the capacity of makers, liable in solido; that Bridger sold his interest in the machinery to Davis, but without the consent of plaintiff; that Davis returned the machinery or part of it, to plaintiff, at the agreed valuation of $500, which amount was to be credited on the notes, and, in consideration thereof, that plaintiff released him from further obligation with respect to the debt represented by the notes; that it was not the intention of plaintiff thereby to release Bridger from the debt in solido, and that plaintiff thereafter attempted to collect from him the balance of said debt, but that no express reservation with respect thereto was made in granting the release to Davis.
Since the return was- filed in this court counsel for plaintiff have filed a supplemental brief, attested by one of their firm, from which it appears that a Ramal statement of facts, which is reproduced in the brief and about covers those above recited, was prepared by them, submitted to defendant’s counsel, by whom it was approved, and delivered to the judge a quo, with the expectation that he would incorporate it in, or make it the basis of, his return. But as we find no reference to it in the return, we presume that it has been overlooked, and, if the occasion required it, we should afford plaintiff an opportunity of calling for its production by a proper proceeding. As the matter stands, and as our conclusions are about *759 the same as those embodied in the statement, we shall address our attention to the question of law:
[1, 2] Was Bridger, as the debtor in solido with Davis, released from the obligation represented by the notes by reason of the release of Davis, in the manner and under the circumstances stated?
Under the title “Of Conventional Obligations,” and the rubric “Of the Remission of Debt,” the Civil Code reads:
“Art. 2203. The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.”
The “remission or conventional discharge,” granted by plaintiff to Davis (which we find in the record) reads:
“In consideration of machinery returned by N. M. Davis, and his financial condition, he is hereby released from further payments on notes given for said machinery.
“Sept. 28, 1912.
“[Signed] W. O. Garrison,
“For J. I. Case T. & M. Co.”
The language of the law and of the discharge are equally plain. The law declares that the discharge of one codebtor in solido discharges all others, unless the creditor has expressly reserved his rights against the latter. Plaintiff does not deny, but insists, that Davis was the codebtor in solido with Bridger of the notes; the discharge granted by it releases Davis from further payment on the notes, and there was no express reservation of its rights against Bridger.
It is said that:
“There has been a well-marked tendency on the part of the higher courts of other states to construe instruments, which have all the technical appearance of releases, to-be merely covenants not to sue, when the intention of the parties could be given effect in that way.”
Which is, no doubt, true, but, that tendency furnishes no authority to this court deliberately, to place upon the written law, or the written instrument of discharge here in question, an interpretation of which the language used .is not susceptible. The fact is undeniable that plaintiff intended to discharge Davis from all further liability with respect to the debt which he and Bridger owed in solido, that it executed a written instrument couched in language which is susceptible of no other interpretation, and that it did not expressly reserve its rights as against Davis’- codebtor in solido; and the result, as a matter of law, was that the eodebtor was also discharged.
In Irwin v. Scribner, 15 La. Ann. 583, this court, speaking through Merrick, G. J., said:
“The act of 1844, p. 14, amended the English text of article 2304, [now 2324] of the Civil Code so as to make it correspond with the French text. Since that period, those who commit torts, or assist or encourage others in so doing, are bound in solido to make reparation to the person injured. The discharge of one debtor in solido, in an obligation arising ex contractu, in general discharges all the coobligors, for the reason that there is but one debt, although due by several; and hence there can be but one satisfaction of the same. In this class of obligations, the Code has made an exception in the single case where the creditor, releasing one of his debtors, has expressly reserved his right against the other debtors in solido, and then he is obliged to credit the other codebtors with the amount so remitted. C. C, 2199, 2157 [now 2203]. Under the civil law, the obligation of cotrespassers was in solido, and they were not allowed the benefit of division, nor any recourse against their co-obligors. Whether this difference between solidary obligations arising ex contractu and ex delicto exists under our law, it is not necessary now to inquire; for, conceding that article 2199, C. C., is applicable to this case, there has not been that express reservation of the right of the plaintiff against the other debtor in solido required by the article.”
In Orr v. Lindsley & Hamilton, 36 La. Ann. 790, plaintiff proceeded by attachment to recover the amount due on a promissory note. Defendants reconvened, claiming damages for the alleged wrongful issuance of the attachment. Plaintiff alleged, by way Of exception, that attachments had been issued simultaneously by several creditors, who thereby became liable in solido for the damages, and that defendants, having compromised with some of them and • granted *761 them conventional discharges, had released the others. The exception was overruled by the trial judge, but this court held that it should have been sustained, saying:
“Each wrongdoer is responsible for the full amount of the damages suffered; and any amount paid by one of them on the score of damages in discharge of the legal obligation resulting from the tortious acts of several wrongdoers, must operate the discharge of all of them, unless the party injured has expressly reserved his right against the latter.”
In Rudison v. Glover, 131 La. 383, 59 South. 817, also, it was held that C. C., art. 2203, applies to obligations arising ex delicto as well as to those arising ex contractu.
On the other hand, it is now unnecessary, under our law, to make all joint obligors parties defendant in a suit upon the obligation; and the release of one from his virile share of the debt does not discharge the others. Drew v. Bank of Monroe, 125 La. 675, 676, 51 South. 683.
It is argued that the matter at issue is governed by section 122 of act 64 of 1904 (known- as the “Negotiable Instruments Act”), and that the section mentioned operates the repeal of article 2203 of the Civil Code in so far as it would otherwise apply to obligations based on negotiable instruments. We are unable to concur in that view. The section relied on reads:
“Sec. 122. The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course * * * unless the instrument is delivered up to the person primarily liable thereon.”
' Referring to the section thus quoted, counsel say in their brief:
“The statute gives the right to a holder of a negotiable instrument to release any party to it, at any time. That provision clearly means that this may be done without affecting the holder’s rights against the other parties to the instrument. It could have no other meaning, and would be a useless and unnecessary statement unless this effect be given it.”
Thé conclusion thus broadly stated, that the holder may release any party to the instrument without affecting his rights against any other party, the learned counsel say—
“is greatly strengthened by the next provision of the section, which places the only restriction intended by the law upon the right mentioned, and that is that, if the holder give an absolute, unconditional renunciation of his rights against the principal debtor, at or after the maturity of the instrument, it is thereby discharged. This provision clearly is intended only for the benefit of parties secondarily liable. One who is primarily liable cannot be allowed to creep beneath its sheltering wings,” etc.
But such an interpretation of the act implies that its framers did not know the difference between the discharge of the instrument and the discharge of one or more of the parties, to the instrument.
We take it, however, construing the first sentence of the section with the second and with other provisions of the statute, that there is no conflict between the statute in question and the Louisiana law.
Thus, we find that the statute provides:
“Sec. 119. A negotiable instrument is discharged:
‘T. By payment in due course by or on behalf of the principal debtor.
“2. By payment in due course by the party accommodated, when the instrument is made or accepted for accommodation. 3. By the intentional cancellation thereof by the holder. 4. By any other act which will discharge a simple contract for the payment of money. 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right.
“Sec. 120. A person secondarily liable on the instrument is discharged:
“1. By any act which discharges the instrument. * * * 3. By the discharge of a prior party. * * * 5. By a release of the principal debtor, unless the holder’s right of recourse against the party secondarily liable is expressly reserved. * * *
“Sec. 196. In any case not provided for in this act the rules of the law merchant shall govern.”
Under our law, as it stood prior to 1870, it was necessary to make all joint obligors parties defendant in a suit to enforce the *763 obligation, and that rule was extended, under the common law, to cases of joint and several obligations as well as to those which were merely joint. The first sentence of section 122 of act 64 of 1904, whatever other purpose and effect it may have, would, at least relieve the holder of a negotiable instrument of that necessity. But it would not follow therefrom that his failure to sue the second indorser on a promissory note would operate to release the maker or the first indorser. On the other hand, according to the express terms of section 120, the discharge, whether by failure to give notice of protest or otherwise, of any prior party to the instrument discharges all subsequent parties; and according to section 119, and the second sentence of section 122, the instrument itself is discharged (section 119) “by anj other act which will discharge a simple contract for the payment of money,” or (section 122) by “an absolute and unconditional renunciation of his [the holders] rights against the principal debtor, made at or after the maturity of the instrument.”
The statute nowhere defines “the act [referred to in section 119] which will discharge a simple contract for the payment of money.” But the law merchant applicable to commercial paper, to which, according to section 196, we must resort, declares that:
“The law which determines the validity and construction of the contract will also generally determine what will avail to discharge the parties.” Oyc. (Commercial Paper) vol. 7, p.
And that law, in this instance, is the law of Louisiana, which declares that the discharge of one of the codebtors in solido discharges all the others.
Beyond that, the reason that the absolute and unconditional renunciation by the holder of his rights against the principal debtor discharges the debt as to all parties secondarily bound (as plaintiff concedes) is that, unless the principal debtor were so released, the parties secondarily bound would be entitled to their recourse in the event of an attempt to hold them, and the same reasons would ordinarily exist in the case of a co-debtor in solido, and, for aught that appears in this record, may exist in this case, since though the precise terms and conditions under which Bridger sold his interest in the machinery for which the notes in question were given are not disclosed by the evidence in the record, it appears that Bridger told plaintiff’s witness Thompson that Davis had agreed to pay the whole debt represented by the notes.
We, therefore, conclude that there is no reversible error in the judgment complained of, and it is accordingly ordered, adjudged, and decreed that the demand of the applicant herein be rejected, and this application dismissed at its cost.