LAND, Justice.
 

 On April 4, 1931, Percy Sandel executed a note for $5,897.26, payable 90 days after date to the order of plaintiff, Parlor City Lumber Company, Inc., with 8 per cent, per annum interest from date, and stipulating 10 per cent, upon the amount of principal and interest as attorney’s fees if the note is not paid at maturity and is placed in the hands of an attorney for collection.
 

 As collateral security for the payment of this note, defendant, Mrs. Anna S. Sandel, on April 4, 1931, executed a note for
 
 *985
 
 $6,000 payable to the order of herself and by her indorsed. This note is payable six months after date, with interest at 8 per cent, per annum from date until paid, with the usual stipulation as to attorney’s fees, and is secured by a second special mortgage on a lot and improvements in the city of Monroe, La., owned by defendant.
 

 At the time of the execution of this collateral special mortgage note for $6,000 by defendant, the property was encumbered by a first special mortgage, of date August 14, 1924, in the original sum of $10,000, held by the Life Insurance Company of Virginia, but upon which there was a balance due, at the time, of only $4,000 in principal, so that there was sufficient equity in the property to serve as ample security for the $6,000 second special mortgage note then executed and delivered to plaintiff by defendant.
 

 Defendant having become delinquent in the payment of the balance due the Life Insurance Company, that company on November 2, 1932, instituted foreclosure proceedings, and, thereafter, on January. 18, 1933, caused execution to issue. The property was duly advertised, and, on February 25, 1933, was sold and bid in by plaintiff, Parlor City Lumber Company, Inc., for the sum of $5,588.43, .or only 39 cents more than the amount required to pay the amount of the first special mortgage of the Life Insurance Company of Virginia.
 

 (1) Defendant’s defense to this suit is that she has been released from any personal obligation on her second special mortgage note for $6,000, herein sued upon, and is entitled to cancellation of same in full.
 

 This defense is predicated upon an alleged oral agreement between plaintiff and defendant.
 

 On the trial of the case defendant offered to prove that, while the foreclosure proceedings were being carried on by the Life Insurance Company of Virginia, it was agreed between plaintiff and herself that, in consideration of defendant’s permitting the property to be sold, and not seeking to protect her equity in the property, and permitting plaintiff to bid in the property, plaintiff agreed that it would release defendant from any personal liability on the note sued upon. And, in addition, if plaintiff were thereafter able to dispose of the property at a price more than sufficient to cover the amount of the first mortgage and' its own second mortgage, plaintiff agreed that such surplus, if any, should be turned over and delivered to the defendant.
 

 This testimony was objected to by counsel for plaintiff on two grounds:
 

 First. That the note sued on was a written instrument, and parol evidence is not admissible to vary, modify, or change its terms by proof of a subsequent or a contemporaneous agreement.
 

 Second. That since defendant has admitted to the court that remission or release was made verbally, and since defendant has not alleged delivery, and plaintiff has not delivered to the defendant the note sued on, oral evidence is not permitted to prove release or remission of the note. Tr., p. 35.
 

 These objections were sustained by the trial judge; the parol evidence tendered by
 
 *987
 
 defendant was excluded; and judgment was rendered in favor of plaintiff as prayed for on the note sued upon. From this judgment defendant has appealed.
 

 The parol evidence rule in this state is embodied in article 2276 of the Revised Civil Code in the following language: “Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
 

 This article simply means that when parties to a contract have committed their negotiations to writing, they are conclusively persumed to make their contract as written, and the power to show otherwise by parol evidence is denied.
 

 Defendant is not attempting by parol to vary, modify, or change the terms of the note, the original written contract, but is attempting to prove a subsequent, new, and independent agreement, intended to modify the original.
 

 That defendant may do so is well established by the jurisprudence of this court.
 

 In the case of Cain v. Pullen, 34 La.Ann. 511, this court recognized that a lease, although in writing, could be modified by subsequent oral agreement.
 

 In that case the court said at page 517: “Here we would note that the testimony to establish this last agreement was objected to, on the ground that it contradicts the written contract of lease. It is shown, as stated, that this agreement was made subsequently to the execution of the written one. It constituted a new and independent contract, intended to modify the original, and to this new contract there was another party, the firm of H. & C. Newman, intervenors.
 

 “It is competent to establish by parol, a subsequent change or modification of a written contract. Greenleaf, Ev. -; (Commandeur v. Russell) 5 Mart. (N.S.) [456] 459; (Bouligny v. Urquhart) 4 La. [29] 30; (Ross v. O’Nail) 1 Rob. 358; (Summers v. United States Ins., Annuity & Trust Co.) 13 La.Ann. 504; (Gardiner v. Bataille) 5 La.Ann. 597; (Cole v. Smith) 29 La.Ann. 551 (29 Am.Rep. 343).”
 

 In Chesapeake
 
 &
 
 Ohio R. Company v. Ray, 101 U.S. 522, 25 L.Ed. 792, the Supreme Court of the United States said: “Notwithstanding what was said in some of the old cases, it is now recognized doctrine that the terms of a contract under seal may be varied by a subsequent parol agreement.”
 

 In the recent case of Salley v. Louviere, 183 La. 92, at pages 98 and 99, 162 So. 811, 813, it is said by the Supreme Court of this State: “It is well settled that this article [2276] of the Civil Code does not forbid the proving by parol evidence of a subsequent agreement
 
 to modify or to revoke
 
 a written agreement.” (Italics ours.)
 

 (2) It is contended by plaintiff that the discharge of a negotiable instrument must be in writing unless the instrument is delivered up to the person primarily liable thereon.
 

 Plaintiff relies on section 122 of Act No. 64 of 1904, the Negotiable Instruments Law of this state, which provides that: “The
 
 *989
 
 holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon.”
 

 On the other hand, it is contended by defendant that this is only
 
 one
 
 method of the discharge of a negotiable instrument, and is not, by any means, the only method by which such an instrument may be discharged, since it is provided in paragraph 4 of section 119 of the Negotiable Instruments Law that a negotiable instrument is discharged “by any other act which will discharge a simple contract for the payment of money.”
 

 In Case Threshing Machine Co. v. Bridger, 133 La. 754, 63 So. 319, the late Chief Justice Monroe, in discussing the provisions of the Negotiable Instruments Law, said in part: “The statute nowhere defines ‘the act (referred to in section 119) which will discharge a simple contract for the payment of money.’ But the law merchant applicable to commercial paper, to which, according to section 196, we must resort, declares that:
 

 “ ‘The law which determines the validity and construction of the contract will also generally determine what will avail to discharge the parties.’ Cyc. (Commercial Paper) vol. 7, p. 1051.
 

 “And that law, in this instance, is the law of Louisiana, which declares that the discharge of one of the codebtors in solidó discharges all the others.
 

 “Beyond that, the reason that the absolute and unconditional renunciation by the holder of his rights against the
 
 principal debtor discharges the debt as to all parties secondarily bound
 
 (as plaintiff concedes) is that, unless
 
 the principal debtor
 
 were so released, the parties secondarily bound
 
 would be entitled to their recourse
 
 in the event of an attempt to hold them, and the same reasons would ordinarily exist in the case of a codebtor in solido, and, for aught that appears in this record, may exist in this case.” 133 La. 754, at pages 763, 764, 63 So. 319, 322. (Italics ours.)
 

 Plaintiff avers in its petition that the special mortgage note executed by defendant, Mrs. Anna S. Sandel, was given to it
 
 as collateral
 
 to secure a note executed by Percy Sandel for $5,897.26, of date April 4, 1931. Pet., art. 3, Tr., p. 6.
 

 Percy Sandel is, therefore, the
 
 principal debtor
 
 in this case. Defendant, Mrs. Anna S. Sandel, does not pretend that plaintiff has renounced any of its rights against Percy Sandel,
 
 the principal debtor.
 
 But she does contend that plaintiff, as the holder of
 
 her collateral
 
 note, which is indorsed by her only, entered into a subsequent, new, and independent agreement
 
 with her
 
 to release
 
 her
 
 from any personal obligation on
 
 her
 
 note. Mrs. Sandel is the maker, payee, and indorser on this note. There are no parties on the note, secondarily bound, whose debt will be discharged by the release of defend
 
 *991
 
 ant, maker of the note, by plaintiff, the holder.
 

 Plaintiff is not “a holder
 
 without
 
 notice,” of the release, and therefore is not protected on that ground by section 122 of the Negotiable Instruments Law.
 

 Plaintiff, as the holder of the note of defendant, with no other parties in interest, does not come, in our opinion, within the purview of section 122 of the Negotiable Instruments Law, but the case is controlled by the authorities already cited in this opinion, permitting proof of the subsequent agreement between plaintiff and defendant by parol evidence. In other words, the case falls under paragraph 4 of section 119 of the Negotiable Instruments Law; and, under the interpretation placed on section 196 of those acts, in the Threshing Machine Co. Case above cited, the law of Louisiana, that a subsequent agreement to modify or revoke a written agreement may be proved by parol evidence, applies to the case at bar.
 

 (3) Finally, plaintiff contends that the subsequent agreement upon which defendant relies is contrary to public policy.
 

 We fail to. appreciate the force of such contention under the particular facts of this case.
 

 At the time the property upon which plaintiff holds a second mortgage was being advertised for sale under a prior first mortgage, plaintiff was the holder of a valid subsisting second mortgage thereon. This property was also encumbered with two judicial mortgages and a special mortgage subordinate to plaintiff’s second mortgage. Mortgage Certificate, Tr., pp. 73 and 74.
 

 The junior mortgage creditors could not have participated in the proceeds until the first two mortgages had been discharged in full.
 

 If plaintiff intended to protect its second mortgage equity in this property at the first mortgage foreclosure sale, it could have made a bid on the property for an amount up to $6,000 more than the amount of the first mortgage debt, without having to put up any portion of this excess, since such excess would, under the law, be payable to it as the holder of the second junior mortgage, and the only practical result of such increased bid would be to discharge pro tanto the second mortgage note.
 

 An increased bid such as this would have inured to defendant’s favor by forcing a credit on this second mortgage note to the extent of the increase and, therefore, the defendant could have appeared at the sale, either herself or by some substituted party, and forced the bid up to an amount sufficient to discharge in full the second mortgage indebtedness..
 

 The parties agreed that defendant would not seek to protect her equity in the property, either by forcing the bid up herself or getting someone else to buy it in for her, thereby permitting the plaintiff to buy the property in and to take over the title with the least possible expense.
 

 Under the facts of this case, we find in such transaction no stifling of competition at a public sale. Defendant was not in the position of a competitive purchaser, who, for a consideration, withdrew from such competition.
 

 
 *993
 
 On the contrary, in making the subsequent agreement alleged upon, she was simply assisting in the accomplishment of an ultimate end, which both plaintiff and defendant had, under the law, every right to accomplish.
 

 Our conclusion is that the parol evidence, offered by defendant on the trial of the case in the court below to establish the subsequent agreement upon which she' relies, was permitted under the repeated decisions of this court, and was clearly admissible..
 

 It is therefore ordered that the judgment appealed from be annulled and reversed, and that this case be remanded to the court below to be further proceeded with consistent with the views herein expressed.
 

 It is further ordered that plaintiff, appellee, pay the costs of appeal and that all other costs await the final judgment in this case.