306 So.2d 453 (1975)
Harold GROSSIE, Plaintiff-Appellant,
v.
LAFAYETTE CONSTRUCTION CO., INC., Defendant-Appellee.
No. 4822.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
Rehearing Denied February 5, 1975.
Writ Refused March 14, 1975.
*454 McBride & Brewster by Glynn Rozas, Lafayette, for plaintiff-appellant.
Edwards, Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, for defendant-appellee.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
This is a suit for $5,204.86 brought by Harold Grossie (a subcontractor) against Lafayette Construction Co., Inc. (the prime contractor) for work allegedly performed by the plaintiff. From a judgment in favor of the plaintiff and against the defendant in the sum of $2,820.86, Grossie has appealed.
On December 21, 1970, the plaintiff and defendant entered into a written subcontract agreement whereby Grossie was to do certain painting and related type work (for the contract price of $58,610.00) on a housing project being constructed by the Housing Authority of the City of Lafayette (hereinafter referred to as Housing Authority). The defendant, Lafayette Construction Co., was the prime contractor for the project.
The abovementioned subcontract contained the following provision: "No extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made."
Subsequent to the execution of this agreement and prior to the completion of the work called for, a change in the prime contract was entered into between the defendant and the Housing Authority, wherein certain units were deleted and others added to the project. Specifically, fifty "zero" bedroom units called for in the original agreement were eliminated in favor of ten "three" bedroom units and twenty "two" bedroom units.
Due to the agreed changes the defendant was required to submit new cost estimates representing the proposed modifications. The defendant's chief executive officer in turn contacted the subcontractors on the project (including the plaintiff herein) requesting revised estimates for the changes. On April 2, 1971, Grossie submitted to the defendant in writing (on his company invoice type forms) a credit in the amount of $16,530.00 for the deletion of the fifty "zero" bedroom units and a $20,024.00 cost for the construction of the added thirty units with two and three bedrooms.
These figures which were submitted by the plaintiff were subsequently incorporated in a cost breakdown prepared by the defendant and in turn submitted to the Housing Authority. According to the cost breakdown, although plaintiff's estimate for painting the new units was higher than for the old, a number of other subcontractors' estimates in other areas were lower. As it turned out the change in the number and composition of the units resulted in a reduction in cost to the Housing Authority, some $1,410.28 less than the original project.
*455 The cost estimates were finally submitted by the Housing Authority to the U. S. Department of Housing and Urban Development (H.U.D.), which agency had to give the final approval on any changes. Thereafter H.U.D. issued its approval of the cost estimates, a work order change was issued by both the Housing Authority and the defendant, and the subcontractors were notified to proceed with construction.
After completion of the job, plaintiff also performed certain additional work involving the repainting of ceilings in a number of the units which had leaked due to defective roofing. Plaintiff submitted a $1,710.86 bill for this latter extra work. Defendant thereafter issued a check in that amount, made payable jointly to the plaintiff and Schexnayder Roofing and Sheet Metal Company, the project's roofing subcontractor. Defendant's reason for making the check payable to both parties was that the plaintiff allegedly charged the roofing contractor "excess profit"[1] above the cost, which was contrary to the project specifications. Plaintiff subsequently refused the check made payable to the two parties.
Suit was thereafter filed on February 20, 1973, for the aforementioned $1,710.86 "extra work" performed, plus $3,494.00 (being the difference in the submitted costs of the originally proposed 50 "zero" bedroom units which were deleted and the 30 larger units which were added).
The defendant answered plaintiff's suit and denied any liability beyond the $58,610.00 amount stipulated in the original subcontract agreement. The record indicates payments totalling $57,500.00 had been paid to the plaintiff before suit was filed. Prior to the trial in this case defendant also tendered a check representing the remaining $1,110.00 due on the original contract. The plaintiff also refused to accept this check as payment for what he claimed was due.
After a trial on the merits the district court awarded the plaintiff the aforementioned $1,710.86, for the "extra work" performed by the plaintiff, in addition to the $1,110.00 amount left unpaid on the original agreement. The trial judge dismissed plaintiff's demands for the remaining $2,384.00 allegedly due as a result of the change order, basing his conclusion on the fact that no written change in the original contract was ever entered into between the parties.
Defendant-appellee bases its defense for the non-payment of any additional amount[2] allegedly due primarily on the aforementioned contract provision. It is contended that no changes in the provisions of the original subcontract were agreed to in writing and as a result any claims exceeding the stipulated contract price would not be accepted and paid. Alternatively, defendant argues that if the plaintiff should try to recover under a theory such as unjust enrichment or quantum meruit, he would have to show that work was performed to defendant's advantage and to plaintiff's detriment. Defendant contends that actually less work was done by the plaintiff after the change order had been executed than would have been required before the changes.[3]
Plaintiff on the other hand alleges that despite no subsequent written contract being drawn up between the parties, nevertheless the original subcontract was modified by the change order, for which the *456 plaintiff submitted cost estimate changes which were subsequently accepted, the work later being performed. Plaintiff additionally points to pertinent oral testimony and the aforementioned written "credit" and "cost" estimates submitted by him for the unit modifications, contending that this evidence was admissible to clearly show a modification of the express terms of the original contract. We feel plaintiff's contentions have merit.
Even assuming that plaintiff did in fact have to paint less surface area than before the change order, the fact remains that the defendant requested cost estimate changes for the modifications. These estimates were submitted (in writing), later incorporated in cost estimates sent to the Housing Authority, and finally agreed upon by H. U.D. A work order change was thereafter issued and the work was performed by the plaintiff as specified. Between the time plaintiff submitted his cost estimates and the completion of the job no communication took place between plaintiff and defendant regarding the fact that plaintiff might have been painting less area than before the modifications. It was only after the work was completed that defendant came forward urging that plaintiff was not due more money than the contract called for, inasmuch as no changes were agreed to in writing and the plaintiff actually did less work. We fully realize the plight that defendant found itself in apparently after the work was completed, i. e. that his subcontractor was actually doing less work for more money. However, at this late date following the occurrence of the foregoing eventsdefendant accepting the plaintiff's revised estimates without question, the work order change being issued, and the work completed by plaintiffdefendant's seemingly equitable argument may not be resorted to by this Court to defeat plaintiff's claim.
We opine that under these facts and circumstances a change in the original contract was clearly contemplated by all parties, the same being subsequently accepted and put into effect. The parol testimony and collateral evidence presented by the plaintiff was admissible to show the change.
Parol evidence is clearly admissible to prove a subsequent verbal agreement, modifying or even abrogating a written contract, if the contract is not one required by law to be in writing. Salley v. Louviere, 183 La. 92, 162 So. 811 (1935); W. R. Aldrich & Co. v. Spalitta, 285 So.2d 835 (La.App. 1st Cir. 1973); Torrey v. Simon-Torrey, Inc., 284 So.2d 130 (La.App. 3rd Cir. 1973), affirmed April 29, 1974; Boland Mach. & Mfg. Co. v. Favret, 177 So. 836 (La.App. Orl.Cir. 1938).
For these reasons the plaintiff should have been granted the entire amount which was asked for, i. e. $5,204.86.
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it awarded the plaintiff $1,710.86 for the "extra work" performed after the completion of the job. The judgment, however, is amended insofar as the trial judge dismissed plaintiff's claims for the $3,494.00, representing the difference occasioned by the change order, and it is hereby ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant in this amount, $3,394.00, which added to the aforementioned $1,710.86, brings the total of this award to $5,204.86. Costs of this appeal are assessed to defendant-appellee.
Affirmed as amended.
NOTES
[1] The record, however, indicates that these socalled "excess profits" included plaintiff's own costs for such items as workmen's compensation insurance for his employees and equipment depreciation.
[2] No real contention was however made at trial that the defendant did not owe the plaintiff for the $1,710.86 "extra work" done after completion of the project. This seems to be despite the fact that no written change in the original contract took place, although the contract provisions provided "no extra work or changes" would be paid for unless agreed to in writing.
[3] The plaintiff brought in no evidence to refute this latter allegation.