334 So.2d 504 (1976)
Joe E. ANZALONE
v.
Harbert S. GREGORY.
ENTERPRISE ELECTRIC, INC.
v.
Harbert S. GREGORY.
Nos. 10700 and 10701.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied June 30, 1976.
*505 Guy L. Deano, Jr., Covington, and James Wilkinson, III, New Orleans, for defendant-appellant in both suits.
Henry A. Mentz, Jr., Hammond, John W. Greene, Covington, for plaintiffs-appellees.
Before LANDRY, COVINGTON and PONDER, JJ.
COVINGTON, Judge:
This appeal arises from judgments in consolidated actions. In the first action, Joe E. Anzalone, the prime contractor [Contractor], brought suit against Harbert S. Gregory [Owner], for the balance of $10,000.00 allegedly due under a construction contract for the building of defendant's home in St. Tammany Parish. The second action was brought by Enterprise Electric, Inc., the electrical contractor [Enterprise], against the homeowner for the sum of $2,829.18, allegedly due for special and extra work done at the specific request of the Owner. The Owner denied both claims, reconvened against the Contractor in the first action, and third-partied the Contractor in the second action.
After trial, the lower court rendered judgment in favor of the Contractor in the amount of $10,000.00 in the first action, in favor of Enterprise in the amount of $2,551.48 in the second action, and rejected all claims of the Owner, who has appealed. We amend and, as amended, affirm.
On August 25, 1970, the prime contractor and the homeowner entered into a written construction contract, for a total price of $105,087.00, including the lot in Tchefuncta Estates. By the time of the completion, the total price was to have been paid, less 10% to be held during the lien period.
The Owner had an architect prepare the plans for his home, which plans were presented to Anzalone so that a bid could be submitted. The original plans called for an elaborate electrical system, which turned out to be unfeasible. After negotiations, the parties agreed on a basic electrical system which became a part of the construction contract. Anzalone subcontracted that portion to Enterprise.
Although the Owner essentially complains of uncompleted work, work done in an unworkmanlike manner, and deviations from the specifications of the contract, the real dispute in both cases is over the electrical *506 work. Parenthetically, the Owner is a graduate Electrical Engineer.
Appellant also contends that the trial court erred in allowing parol evidence to show a separate agreement with Enterprise, or to vary the terms of the initial construction contract with Anzalone. There is no merit to this contention. Parol evidence was not offered to vary the terms of the original written construction contract, but rather to show a subsequent, new and independent agreement between the Owner and Enterprise, intended to modify the original contract. Parol evidence is admissible for this purpose; Parlor City Lumber Co. v. Sandel, 186 La. 982, 173 So. 737 (1937); Cassibry, Louisiana's Parol Evidence Rule: Civil Code Article 2276 (Comment), 35 La.L.Rev. 779, 790 (1975); McMurdo, Building Contracts in Louisiana (Comment), 7 La.L.Rev. 564, 571 (1947).
In the case of Salley v. Louviere, 183 La. 92, 98, 162 So. 811, 813 (1935), it is stated:
"It is well settled that this article of the Civil Code [LSA-C.C. 2276] does not forbid the proving by parol evidence of a subsequent agreement to modify or to revoke a written agreement."
Particularly pertinent to the matter before the court are the cases of Grossie v. Lafayette Construction Co., Inc., 306 So.2d 453 (La.App. 3 Cir. 1975), writ denied, La., 309 So.2d 354, and Jimco, Inc. v. Gentilly Terrace Apartments, Inc., 230 So.2d 281 (La.App. 4 Cir. 1970).
In Grossie, at page 456:
"Parole evidence is clearly admissible to prove a subsequent verbal agreement, modifying or even abrogating a written contract, if the contract is not one required by law to be in writing."
And, in the Jimco, Inc. case, at page 283:
"There is no statute in Louisiana making it mandatory that a private owner enter into a written building contract, record it and furnish bond to construct an edifice."
Thus, since a construction contract need not be in writing, parol evidence is admissible to prove a subsequent verbal agreement, or to modify or even abrogate a written construction contract; W. R. Aldrich Company v. Spallita, 285 So.2d 835, 836 (La.App. 1 Cir. 1973).
The facts show that the Owner and Enterprise did in fact enter into a subsequent, side agreement relative to certain extra and special electrical work. At the proper time, Enterprise began installing the electrical system and the Owner visited the building site on many occasions. As the work progressed, certain changes were made, including moving outlets, installing new ones, et cetera, all with the approval of the Owner, but made directly with Enterprise and not through the prime contractor, Anzalone.
Enterprise was fully paid for its subcontracting work on the initial contract, but not for the work done under the separate agreement. The Contractor was paid in full except for $10,000.00 which was retained during the lien period.
However, we find that the sums awarded are not correct. On direct examination, Tr. 239, Mrs. Anzalone testified that the balance due by Gregory after various credits, is $9,794.92; this is in accord with exhibit "Anzalone 8". Further, it is not contradicted that neither Anzalone nor Enterprise did driveway electrical ("yard lighting") work. In connection therewith, Anzalone Exhibit 7, signed by Gregory and Anzalone, sets forth that Gregory paid $62,141.82 on November 2, 1971, and that $10,000.00 was to be retained during the lien period, which was to start upon completion of all unfinished items. This document contains the language ". . . yard *507 lights to be installed upon completion of landscaping . . .". Defendant's exhibits 8 and 9 indicate that Enterprise, in March, 1972, after being notified that the landscaping was completed, agreed to install it ". . . just as soon as the weather permits . . .". Nevertheless, Enterprise did not do so and deducted that portion of its bid amount in its settlement with Anzalone. After giving Enterprise prior written notice of his intention, with a copy to Anzalone's attorney, Gregory got three bids and used the lowest bid to get this work done; this amounted to $875.00, Tr. 324. Therefore, the award to Mr. Anzalone is reduced to the claimed amount, $9,794.92, less said $875.00, or $8,919.92.
The award to Enterprise must also be reduced. Gregory's testimony, Tr. 253, that change orders 4 and 5, amounting to $20.11, shown in P11, were for the contractor's convenience is both logical and uncontroverted. Purported change orders 6 and 7 contain $20.34 in charges for work contained in the original plan. One of the changes indicated by P-14 was made at the start of the wiring and entailed less material and no more labor than the original plan; the other change in P-14 was for the convenience of the contractor. Therefore, the charges of $117.90 reflected therein are not warranted. The $12.92 charge in P-15 for alleged change order 24 is a duplication of a portion of P-13. The $25.00 charge in P-17, change orders 20 and 21, were on the original plans. Obviously the contractor erred in billing Gregory for this. Gregory was justified in believing that Enterprise's superintendent, Osbon, would get additional fire detectors (Gregory's materialman having shipped three less than needed) as a favorinstead, Enterprise charged him $12.50 merely to order them; this expense for "labor" is not justified. Gregory's testimony, Tr. 353, is undisputed to the effect that the work was never done which would allow the flood lights in the back of the house to be switched separately. He testified that he made this request but that the single switch had already been installed and ". . . I didn't make them change it." The $81.25 charge for this work, shown in P-22, is disallowed. So is the $173.95 charge in the same exhibit; the electrostatic filter was not installed by Enterprise, Tr. 355. A portion of the charges on P-22 were repeated on P-23. This charge of $52.18 had to do with bracket lights in order that the medicine cabinet doors would open. While Gregory did not feel that he should have to pay for moving the brackets, he did agree to do so as Mr. Osbon felt that it should be classified as an error. However, he did not agree to pay for it twice. The $73.28 charge, P-25, for extra work on air conditioning was among the funds paid by Gregory to Anzalone and Enterprise should have billed the Contractor for that item. The portion of P-26 which comprises charge order 18, amounting to $22.42, is erroneous because the receptacle and circuit for a built-in ironing board were on the original plans.
To summarize the Enterprise judgment, the bills submitted by it total $3,106.88 and it allowed a credit of $277.00. Evidently the trial court inadvertently deducted the latter sum twice and thereby arrived at its figure of $2,551.48. The corrected amount would be $2,829.18; deducting the $611.21 which we disallow reduces the judgment to $2,217.33.
Accordingly, the judgments are amended, reducing the award to Anzalone to $8,919.92 and reducing the award to Enterprise to $2,217.33. As thus amended, the judgment in each of these consolidated cases is affirmed at appellant's cost.
AMENDED AND, AS AMENDED, AFFIRMED.