482 So.2d 1002 (1986)
WELLCRAFT MARINE, INC., Plaintiff-Appellant,
v.
Edward A. DAUTERIVE, Jr., et al., Defendants-Appellees.
No. 84-1024.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
Landry, Watkins & Bonin, Nan M. Landry, New Iberia, for plaintiff-appellant.
Armentor & Wattigny, Gerard B. Wattigny, New Iberia, for defendants-appellees.
Before STOKER, YELVERTON and KNOLL, JJ.
STOKER, Judge.
Wellcraft Marine, Inc. (Wellcraft) sued E.A. Dauterive, Jr. on an open account for $9,205.62, together with legal interest from the date of judicial demand. Wellcraft also sought reasonable attorney's fees and all costs of the proceedings. Dauterive reconvened demanding damages in the amount of $535,000 for the breach of an alleged exclusive franchise he had with Wellcraft.
Evidence was presented at trial, without objection by Dauterive, which the trial court held established Dauterive's debt to Wellcraft in the amount of $10,472.49, together with legal interest from date of judicial demand. This judgment is not questioned by Dauterive on appeal.
The trial court rendered a judgment for Dauterive and against Wellcraft on the reconventional demand in the amount of $21,474.62, together with legal interest from date of judicial demand. Wellcraft's demand for attorney's fees was denied and court costs were assessed to both parties. Wellcraft appeals the court's adverse decisions.

*1003 FACTS
Dauterive began a business relationship with Wellcraft in the late 1960s when he became a Wellcraft dealer. Wellcraft is a Florida corporation which sells boats. Dauterive's place of business was in New Iberia. The Wellcraft area representative with whom Dauterive dealt at that time was Mike Collins. When Collins left Wellcraft sometime around 1970, he was replaced by A.W. Heinz. It appears that the area representative had the power to execute dealership agreements on behalf of the company. Wellcraft refranchised its dealers every July, at which time a dealership agreement was signed.
Dauterive testified that when he initially became a Wellcraft dealer it was with the understanding that he would have an exclusive territory. This agreement was made with Mike Collins, the Wellcraft area representative, in the late 1960s. Dauterive said that he would not have accepted the dealership under any other circumstances because he knew from past experience in the boat selling business that a dealer needed the protection of exclusivity in a particular area in order to succeed. Dauterive testified that Mike Collins agreed to grant Dauterive an exclusive Wellcraft dealership which covered the area from Houma to Texas and as far north as Opelousas. Dauterive carried no other line of boats other than Wellcraft, and every spring at the dealer meeting he ordered around a quarter of a million dollars worth of boats and signed the standard dealership form. The dealers had to make their order before the dealership agreement was signed.
When A.W. Heinz became the area representative the same agreement was made. Heinz verified Dauterive's testimony concerning the exclusive territory agreement. Heinz claimed he had the authority to make such an agreement and that as long as Dauterive remained a volume dealer the exclusive territory would be protected.
In May of 1977 or 1978, Dauterive sold Dauterive Marine Service to Watney Gordy and Gordy became the Wellcraft dealer. Dauterive continued to work as a salesman for Gordy. (There is a great inconsistency in the record as to whether this occurred in 1977 or 1978. It is unclear whether this is a typographical error.) In October of the same year, Wellcraft "pulled the dealership" from Gordy because of shortages in the stock. The Wellcraft president told Dauterive that Wellcraft would refuse to sell boats to Gordy or Dauterive Marine which was owned by Gordy. At that time Wellcraft asked Dauterive to take the dealership back and agreed to sell boats to Dauterive personally. Heinz had Dauterive sign the standard dealership form, but apparently Gordy continued to run the retail business for sometime after that. When Gordy "really went under" Dauterive took over the entire business and actually became a retail dealer again. At that time he sat down with Heinz and discussed the exclusive nature of their deal again. Dauterive would only carry and sell Wellcraft and would do so on a volume basis. Likewise, Dauterive would have an exclusive area in which Wellcraft would not establish any other dealer and which covered the territory from Houma to Texas and north to Opelousas.
In July of 1979 when it was time to refranchise the dealerships, Heinz was no longer the area representative. Ham Hamburger was the representative and he had Dauterive sign the standard form. Dauterive ordered the usual volume of boats.
In July of 1979 the "gas crunch" hit the country and Louisiana boat dealers were particularly hard hit. While Dauterive's sales were down, he had continued to purchase from Wellcraft his usual volume. In February or March of 1980 Wellcraft established a new dealership in Crowley, Louisiana, within Dauterive's alleged territory. Dauterive discovered the establishment of the new dealer almost immediately when he lost a big sale to the new dealer. He called Wellcraft to find out what was going on and Mr. Hamburger called back to apologize. He also promised that there would be no more sales to that dealer and that he would send Dauterive a letter to that effect. This letter was never forthcoming *1004 and Wellcraft continued sales to the Crowley dealer.
Dauterive decided to sell out because he felt his dealership was of no value if the Crowley dealer continued to operate. He sold his inventory to Mrs. Mestayer with apparent approval from Wellcraft. He sold it for a loss.
The trial court pointed out that the alleged agreement concerning an exclusive sales territory had never been included in any of the written dealership agreements signed by Dauterive. The judge held that it was the 1979 written dealership agreement that was at issue. In the written reasons for judgment the trial judge explained further:
"More specifically, this Court must determine whether this contract is subject to oral modification and if so, was there an oral modification such that Dauterive was granted a valid exclusive dealership."
The written dealership contract contains the following language:
"13. Entire Agreement; Governing Laws, Severability;
This agreement contains the entire agreement between the parties with respect to the subject matter hereof. This agreement may be amended only as may be agreed upon in writing by Wellcraft and dealer and shall be governed by the laws of Florida. If any provision hereof is held to be invalid or unenforceable for any reason, the validity or enforceability of all other provisions shall not be affected thereby."

CHOICE OF LAW
The trial court observed that contracts made in one state may be made with reference to the laws of another state, so long as the law chosen has a significant relationship to the contract or the parties. Davis v. Humble Oil & Refining Company, 283 So.2d 783 (La.App. 1st Cir.1973). Since Wellcraft Marine is based in Florida, the court found this was a sufficient relationship to justify applying Florida law. With this we agree. In U.S. Leasing Corporation v. Keiler, 290 So.2d 427 (La.App. 4th Cir.1974), the court held: "The nature, validity, and construction of a contract are determined by the lex loci contractus; the remedy according to the lex fori." We believe the trial court appropriately applied this principle. But we note that the ultimate result in this case would be the same under Louisiana law. Grossie v. Lafayette Construction Co., Inc., 306 So.2d 453 (La. App. 3d Cir.1975), writ denied, 309 So.2d 354 (La.1975); Wahlder v. Tiger Stop, Inc. 391 So.2d 535 (La.App.3d Cir.1980), writ denied, 396 So.2d 1351 (La.1981); Pelican Elec. Contractors v. Neumeyer, 419 So.2d 1 (La.App. 4th Cir.1982), writ denied, 423 So.2d 1150 (La.1982).
The trial court held that under Florida law, when parties enter into a written agreement, all representations, negotiations or agreements which precede and accompany the making of the agreement are presumed to have merged into the written contract. Financial Federal Savings and Loan Association v. Continental Enterprises, Inc., 338 So.2d 907 (Fla. 3d Dist.Ct. App.1976). The lower court also found that under Florida law written contracts can be modified by an agreement of the parties, even though the written contract purports to prohibit such a modification. Pan American Engineering Co., Inc. v. Poncho's Construction Co., 387 So.2d 1052 (Fla. 5th Dist.Ct.App.1980). The judge's next step was to decide if there had been an agreement or modification concerning an exclusive territory.

EXCLUSIVE AGREEMENT
Concerning this point, the reasons for judgment state as follows:
"It is Mr. Dauterive's testimony that after he learned of the Crowley dealership, he had a phone conversation with Mr. Hamburger, Wellcraft's agent. Mr. Dauterive informed Mr. Hamburger of Dauterive's understanding as to what would be the extent of his exclusive territory and that his business would be jeopardized by the creation of a dealership in *1005 Crowley. When Mr. Hamburger was told this, he apoligized [sic] to Dauterive and told him that no more boats would be sold in Crowley. This Court finds Mr. Dauterive's testimony as to this conversation is credible and further finds that this conversation is a ratification of the previous agreement between Wellcraft, through its agents, and Mr. Dauterive as to Mr. Dauterive's exclusive territory. This Court therefore holds that there was a subsequent agreement bestowing upon Dauterive an exclusive territory within which to sell boats and that this agreement modified the Wellcraft Dealership Agreement executed in July 1979. The Wellcraft vice-president testified that Wellcraft does not grant exclusive territory agreements. The Court finds this testimony hard to believe because both Mr. Dauterive and the Crowley Wellcraft dealer, Mr. Morrow, understood that they would have an exclusive territory. The Crowley dealer, in fact, testified that in negotiating the dealership agreement with Wellcraft, he was told that Mr. Dauterive would no longer be selling Wellcraft boats and that the New Iberia area would be part of his exclusive territory."
We agree that there was an agreement between Wellcraft, through its agents, and Dauterive concerning an exclusive territory. However, we do not find it proper to hold that the conversation on the telephone was a ratification of a previous agreement.
Dauterive had been a dealer for Wellcraft for approximately a decade with only a break of six months at which time Gordy had the franchise. Before the sellout to Gordy, it is clear that Heinz, the Wellcraft agent, and Dauterive had an understanding that Dauterive had an exclusive territory. It was Heinz who signed Dauterive back on as a dealer after Gordy failed. It is clear again that the two men agreed that the territory was exclusive. Dauterive had a right to believe the 1979 agreement was the same that he had signed for many years.
The behavior of both parties indicates that the agreement was of an exclusive nature. Dauterive clearly carried no other line of boats and refused other franchise lines. Through the years, instead of opening other dealerships in Dauterive's territory, Wellcraft approved the placement of Dauterive's stock with other "sub-dealers." In fact, at the same time it granted the Crowley dealership without Dauterive's knowledge, it was also talking with Dauterive about placing some boats on a Lafayette lot.
Therefore, we find that Dauterive had an exclusive territory agreement with Wellcraft from the time of signing the 1979 agreement.

BREACH OF AGREEMENT AND DAMAGES
The trial court held that Wellcraft breached the exclusive territory agreement with Dauterive. Since we find that an agreement existed concerning an exclusive territory from the time of signing the 1979 agreement, we hold that it was breached when the Crowley dealership was established. The record shows only that it was established in February or March of 1980. In the absence of other testimony we hold the breach occurred in March.
Dauterive decided to sell his stock of Wellcraft boats when he realized the Crowley dealer would not be closed. This development reasonably justified Dauterive's closing down his business, if it did not compel it. In determining the amount of damages to which Dauterive is entitled, the first item considered was the loss Dauterive incurred when he sold his stock of boats to Mrs. Mestayer, another boat dealer in New Iberia. The court held the loss Dauterive suffered was the difference between the cost of the boats and the price for which he sold them to Mrs. Mestayer. This figure is $15,374.62.
Dauterive also seeks to recover the amount he was drawing out of the business every two weeks and his lost profits. We think the trial judge correctly limited any recovery to the term of the contract. The *1006 contract expiration date was July 15, 1980. At that time either party could have terminated any agreement by refusing to enter into the new yearly agreement.
Dauterive had been drawing $700 every two weeks from his business. The record indicates that the $700 draw was salary and not an advance on any eventual profit earned. When he sold to Mrs. Mestayer he could no longer draw this amount. He sold out on May 14, 1980, therefore the trial judge was correct in awarding him $3,500, which is $700 every two weeks between May 15, 1980 and July 15, 1980, the expiration date of the contract.
In calculating loss of profit the reasons for judgment provide:
"Dauterive also seeks to recover loss of profit. There are two contentions which Dauterive asserts as a basis of reaching the proper amount for the settlement of damages. Dauterive contends that he should be allowed to recover the same profit which he made in 1979 or $15,850.00. The Court finds that this is not a proper basis for determining the loss of profits. The contract suit [sic] upon was in effect for approximately ½ of the year of 1979. The contracts [sic] expiration date was July 15, 1980. Thus the dealership would have expired, if not renewed, in July 1980. Secondly, Dauterive testified himself that the gas crunch had depleted his income from sales. He testified that this affected sales until January 1980 but the Court finds that even after January sales would not have reached the previous level prior to the gas crunch. The Court also finds that the second basis alleged i.e. the loss shown by Dauterive in the amount of $48,104.00 on his 1980 tax return is not a proper amount on which to base his damages. As noted previously, the dealership agreement was affective [sic] only until July 15, 1980, rather than through the entire year. Some of the loss can also be attributed to the gas shortage.
"Testimony for Mr. Morrow, the Crowley dealer, indicated that his dealership was established in February or March 1980. Mr. Dauterive learned of the dealership sometime later. The date of the exclusive dealership agreement could only be the date of the ratification of the exclusive dealership agreement of years past. It is not clear when the conversation between Mr. Dauterive and Mr. Hamburger transpired but the Court finds this date to be sometime in April, 1980. Thus when Wellcraft failed to close the Crowley dealership, it breeched [sic] the exclusive territory agreement. The Court therefore holds that the contract was breeched [sic] two months before the contract would have terminated. Dauterive was therefore entitled to recover a reasonable amount for loss of profit for two months. Considering the profit made by Dauterive in 1979 for the entire year, the Court finds a reasonable amount would be $2,600.00 or $1,300.00 per month."
Since we find that the agreement was breached in March, 1980, the loss of profits must be calculated from that date. We calculate $1,300 per month from March 15, 1980 to July 15, 1980, or a total of four months, $5,200. Therefore, the total award for damages should be $24,074.62. Accordingly, we will modify the award to conform with these calculations. LSA-C.C.P. art. 2164.

ATTORNEY'S FEES
The trial judge denied Wellcraft's demand for attorney's fees in connection with the principal demand against Dauterive based on Wellcraft's failure to introduce a letter of demand as required by LSA-R.S. 9:2781. R.S. 9:2781 is a statute which provides for an award of attorney's fees if the statutorily required notice is given the debtor and he fails to pay timely. It is not clear whether this statute is applicable to a contract that provides for attorney's fees. We decline to make that determination because we find that attorney's fees should be denied on another basis.
The contract provides:

*1007 "Payment for Wellcraft products purchased by Dealer shall be made according to Wellcraft's then current policy. Dealer agrees to pay all accounts owing to Wellcraft without setoff or other charge unless specifically authorized in writing by Wellcraft. Dealer agrees to pay all costs of collection, including reasonable attorney's fees, incurred by Wellcraft in the collection of any sum due from dealer to Wellcraft...."
Wellcraft's "then current policy" is ambiguous and there appears to be nothing in the record indicating what it is. We therefore affirm the trial court's judgment denying attorney's fees.

CONCLUSION
For the reasons stated above we affirm the trial court's judgment on the principal demand in favor of Wellcraft Marine, Inc. and against Edward A. Dauterive, Jr. We further affirm the trial court's assessment of court costs for that proceeding as well as the trial court's denial of attorney's fees for prosecuting its recovery on the main demand.
We affirm but modify the judgment on the reconventional demand in favor of Edward A. Dauterive, Jr. and against Wellcraft Marine, Inc. We modify the total award in favor of Dauterive to increase it from $21,474.62 to $24,074.62, together with legal interest from date of judicial demand until paid. With this modification, the judgment in favor of Dauterive is affirmed.
The costs of this appeal are assessed to Wellcraft Marine, Inc.
PRINCIPAL DEMAND AFFIRMED; RECONVENTIONAL DEMAND MODIFIED AND AFFIRMED AS MODIFIED.